**In re Frederick R. WEISMAN, Petitioner.**

**Sachiko T. BOWER, Plaintiff,**

**v.**

**Frederick R. WEISMAN, Frederick Weisman Co., and Rare Properties, Inc., Defendants.**

**No. 488, Docket 87-3043.**

United States Court of Appeals, Second Circuit.

Petition for Writ of Mandamus Submitted Oct. 26, 1987.

Decided Oct. 28, 1987.

Opinion Nov. 24, 1987.

Summit, Rovins & Feldesman, New York City, Crowley, Lewis & Cuneo, Los Angeles, Cal. (John L. Amabile, Arthur J. Crowley, Kathryn J. Fritz, Sarah J. Hoover, Robert M. Brigantic, of counsel), for petitioner Frederick R. Weisman.

Montclare & Guay, New York City (Paul Montclare, of counsel), for respondent Sachiko T. Bower.

Before FEINBERG, Chief Judge, NEWMAN and WINTER, Circuit Judges.

FEINBERG, Chief Judge:

Petitioner Frederick R. Weisman seeks a writ of mandamus directing the United States District Court for the Southern District of New York, Robert W. Sweet, J., to vacate in part a discovery order that compelled Weisman to produce certain documents that Weisman claims are protected by the attorney-client privilege. The judge's ruling was based upon a finding that Weisman had waived his right to assert the privilege as to the papers in question. Petitioner claims that under this court's recent opinion in *In re von Bulow,* 828 F.2d 94 (2d Cir.1987), mandamus is appropriate to review Judge Sweet's order and that the order is erroneous and should be reversed. The matter was submitted to this panel the week of October 26, 1987, along with petitioner's motion for a stay of the order pending determination of the

mandamus petition. On October 28, we denied both the petition and the stay in a brief order that stated that an opinion would follow. The following constitutes that opinion, which holds that mandamus is not an appropriate vehicle for review here.

## I. Facts

The relevant facts in this hotly-contested diversity case are as follows. Petitioner Weisman is a wealthy businessman who for about 15 years had a close personal and business relationship with Sachiko Bower. The relationship ended in the summer of 1985. In November 1985, Bower sued Weisman and two corporations he controls in New York State Supreme Court. The complaint alleged that Weisman had breached his agreement to provide Bower with an interest in his business affairs and with financial security, even after their relationship ended, as long as Bower, a Japanese citizen, did not remarry or leave the United States. Defendants removed the action to the federal courts. As might be expected given the nature of the allegations, the litigation has been bitter. It has already produced extensive motion practice and discovery and three opinions in the district court (two of them reported at 639 F.Supp. 532 and 650 F.Supp. 1415), bulky papers on the mandamus petition and motion in this court on the eve of trial, and a related action in state court in California, in which defendants here are the plaintiffs and Bower is the defendant.

In the proceedings before Judge Sweet, Bower produced a letter, dated July 15, 1983, that allegedly contained the understanding of the parties regarding various transactions to be effected. According to this document, Bower would receive an ownership interest in a home, financial security even after Weisman's death, including the benefit of a substantial irrevocable trust, and an interest in a business venture. The letter appears to be signed by both Weisman and Bower. Weisman claimed that the letter was merely a draft for discussion and that his signature on this and other documents was forged. To support this defense, Weisman voluntarily produced over 20 pages of handwritten notes of his attorney, Richard Gilbert, arguably showing that negotiations over the substance of the matters referred to in the July 15, 1983 document took place in late 1983 and throughout 1984, well after the date of the alleged "agreement." The notes reflect, among other things, attorney-client communications about Weisman's will and various trust agreements then allegedly in contemplation. Weisman also voluntarily produced a series of documents that relate to understandings and draft property settlement agreements discussed in August 1984. The papers included letters from Weisman's attorney to Weisman's financial consultant, stating the purpose of the agreements and the reasons for various changes, e.g., that the documents represent "an attempt to take the first step toward protecting [Weisman's] interest from any claim by [Bower] after his death."

Bower moved thereafter to compel discovery of, among other things, various testamentary trust instruments and a codicil to Weisman's will and various communications in the files of Weisman's attorneys relating to proposed property agreements drafted in 1982–84. Bower argued before Judge Sweet that these documents "would tend to establish the pattern of conduct between Bower and Weisman" and "may be relevant in describing the nature" of the relationship. Weisman refused to produce them on the ground of attorney-client privilege. Bower argued that the privilege had been waived by Weisman's voluntary production of attorney Gilbert's extensive handwritten notes and letters to Weisman's financial consultant.

Judge Sweet agreed with Bower in part. In an 11–page opinion, the judge held that Weisman, by producing copies of Gilbert's notes, had waived his privilege with respect to the subject matter of the trust agreements and codicil and ordered production of those documents. The judge also held that, by producing documents relating to the draft property settlement agreements, Weisman had waived his privilege with respect to papers in Gilbert's files bearing on "the issue of protecting Weisman's interest from claims by Bower after his death."

However, the judge denied discovery of all the other communications from Weisman in Gilbert's files and discovery of communications between Weisman and another attorney. Almost five weeks later, on October 14, petitioner filed in this court his petition for a writ of mandamus and, two weeks later, shortly before the scheduled trial date of November 2, his motion for a stay pending determination of the petition for mandamus. As indicated above, we denied both applications shortly thereafter.

## II. Appropriateness of Mandamus

In his petition for mandamus, petitioner argues that under this court's recent decision in *In re von Bulow*, mandamus is an appropriate procedure for obtaining review of Judge Sweet's order and that, upon such review, this court should find that the judge erred by construing Weisman's waiver of the attorney-client privilege much too broadly. As will be seen, we do not find it necessary to consider the merits of Judge Sweet's order because we conclude that the requirements for mandamus relief are not met.

■ Mandamus is an extraordinary writ, and, when applied to an interlocutory discovery order, runs directly contrary to the philosophy of the federal final judgment rule. That rule is not only statutory, see 28 U.S.C. § 1291, but is a fundamental characteristic of federal practice and one of the chief distinctions between the operation of federal and some state courts, e.g., New York,[1] the state whose substantive law Judge Sweet applied.[2] The policies behind the final judgment rule and the general refusal of federal courts to allow interlocutory review of discovery orders have been stated many times. Thus, in *American Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 280 (2d Cir.1967), we stated that among "the sound reasons" for the final judgment rule in the context now before us are the following:

an appellant's ultimate right of review upon an appeal from a final judgment in the action; the elimination of unnecessary appeals, since the complaining party may win the case or settle it; the absence of irreparable harm from the vast majority of orders requiring production of documents; the potential for harassment of litigants by nuisance appeals, and the fact that any appeal tends to delay or deter trial or settlement of a lawsuit; the burden on the reviewing court's docket from appeals of housekeeping matters in the district courts; and the slim chance for reversal of all but the most unusual discovery orders.

A long line of precedent in this court has echoed these observations. See, e.g., *In re Attorney General of the United States*, 596 F.2d 58, 61 (2d Cir.), cert. denied, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); *UAW v. National Caucus of Labor Committees*, 525 F.2d 323, 324–25 (2d Cir. 1975); *Baker v. United States Steel Corporation*, 492 F.2d 1074, 1077 (2d Cir.1974).

We realize, of course, that petitioner does not directly attack the federal final judgment rule and the policies it embodies. Indeed, his argument rests in large part on language quoted from our opinion in *American Express*. He claims that he is entitled to what that opinion called one of the "escape hatches from the finality rule: ... an extraordinary writ." Id. at 380 F.2d 282. But it is important in considering his request for such a writ to note that it is made in the context of a ruling on a discovery order. Petitioner claims that if he is compelled to comply with the district court's order, he will suffer irreparably the "near-total destruction of [his] ability to freely exercise his testamentary capacity unhindered by the interference of others." We are not sure why this is so, but we do understand the additional argument that ordinarily a testator should be allowed "to alter freely and in private his testamentary desires," and once made public they are no

---

1. Cf. R. MacCrate, J.D. Hopkins & M. Rosenberg, *Appellate Justice in N.Y.* 86–88 (1982) (recommending that New York consider a change to limit review of interlocutory ·orders).

2. Weisman is apparently a resident of California. The parties apparently agree that New York and California law do not differ on the issues presented to Judge Sweet, and the judge so assumed.

longer private. This is true, but the argument that the cat is being let out of the bag could logically be made in any case where a court rejects a claim of work product or attorney-client privilege. Indeed, in *American Express* the argument was made that the harm from allowing erroneous discovery of work-product could not be undone, but we nevertheless refused to "elevate" the values and policies embodied in the work-product doctrine above those advanced by "the normal federal rule on appealability." Id. at 380 F.2d 282.

Petitioner argues, however, that even though we denied mandamus in the context of a claim of loss of work-product protection in *American Express* and have followed that course since in the face of similar claims involving the attorney-client privilege, e.g., *Xerox Corp. v. SCM Corp.*, 534 F.2d 1031, 1032 (2d Cir.1976) (per curiam); *International Business Machines Corp. v. United States*, 480 F.2d 293, 298–99 (2d Cir.1973) (in banc), cert. denied, 416 U.S. 980, 94 S.Ct. 2413, 40 L.Ed.2d 777 (1974), we should nevertheless issue the writ here. Petitioner relies heavily on our recent decision in *In re von Bulow*. The mandamus petition in that case grew out of a civil action in the Southern District against Claus von Bulow, after he was acquitted on retrial of assault with intent to murder his wife. The action was brought by her children from a prior marriage and alleged common-law assault, negligence, fraud and RICO violations. After the suit was filed, Random House published a book by one of von Bulow's attorneys entitled "Reversal of Fortune—Inside the von Bulow Case," which recounted the events of Von Bulow's first criminal trial, his successful appeal and his acquittal on retrial. Von Bulow and his attorney also helped to publicize the book on television and radio shows. The plaintiff children then moved in the civil suit to compel discovery of certain discussions between von Bulow and his at-

torneys, arguing that the attorney-client privilege had been waived with respect to matters disclosed in the book. The district court granted the motion. Of particular significance to us, petitioner argues, is that this court thereafter granted a writ of mandamus and directed the district court to vacate its discovery order. Petitioner argues that *In re von Bulow* requires us to hold that mandamus is an appropriate remedy here as well.

We do not agree. *In re von Bulow* is apparently the first case in which this court has issued a writ of mandamus to review a discovery order rejecting a claim of attorney-client privilege.[3] But cf. *International Business Machines Corp. v. United States*, 471 F.2d 507, 516–17 (2d Cir.1972), rev'd in banc, 480 F.2d 293 (2d Cir.1973), cert. denied, 416 U.S. 980, 94 S.Ct. 2413, 40 L.Ed.2d 777 (1974). *In re von Bulow*, however, grew out of a highly unusual situation arising from a defense lawyer's writing a book about his case. The case involved the well-recognized "fairness doctrine," which prevents a party from releasing favorable portions of otherwise privileged documents and withholding the rest. See 8 J. Wigmore, Evidence § 2327, at 636–38 (McNaughton rev. ed. 1961). The doctrine is usually applied to waivers of the attorney-client privilege by disclosures made in the course of litigation. The highly unusual question in *In re von Bulow* was whether the doctrine should be extended to extrajudicial disclosures in a book by the party's own attorney and applied in an extremely broad manner, to call for *all* communications between von Bulow and his attorney (and all other defense counsel) relating to the published conversations. The case before us is quite different. Weisman's disclosures were made by him in judicial proceedings as a party in litigation. Whether or not the district

---

**3.** Other circuits, often applying a more expansive view of mandamus than recognized in this circuit, have granted mandamus to review discovery orders rejecting claims of attorney-client privilege. See, e.g., *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 599 (8th Cir.1977), modified in banc, 572 F.2d 606 (8th Cir.1978); *Sand-*

*erson v. Winner*, 507 F.2d 477, 479 (10th Cir. 1974) (per curiam), cert. denied, 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir.1970) (per curiam), aff'd mem. by an equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971).

judge applied the waiver doctrine correctly, the doctrine in that context is well-settled.

In determining the appropriateness of mandamus relief in *In re von Bulow*, the panel applied this circuit's well-settled standard. See *In re International Business Machines Corp.*, 687 F.2d 591, 599 (2d Cir. 1982). Quoting *American Express*, 380 F.2d at 282–83, the *In re von Bulow* panel stated that mandamus may be available "[w]hen a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment," and that "the touchstones ... of review by mandamus are usurpation of power, clear abuse of discretion and the presence of an issue of first impression." 828 F.2d at 97. The "touchstones" enumerated in *American Express* are used to measure whether a question of "extraordinary significance" or an "extreme need for reversal" exists. See *Investment Properties International, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707 (2d Cir.1972). See also *Kaufman v. Edelstein*, 539 F.2d 811, 819 (2d Cir.1976).

The panel in *In re von Bulow* closely scrutinized the legal questions presented by the district court's discovery order and determined that the case presented a legal question of first impression of "extraordinary significance." 828 F.2d at 98. Applying this circuit's well-settled standard for mandamus, the court concluded that mandamus was appropriate to the facts of that case. However, we conclude that this case does not present a legal question of first impression of "extraordinary significance" and that no "extreme need for reversal" exists. None of the "touchstones" of *American Express* is present here. The district judge had the power to enter the order under attack. He applied well-settled principles of law, and whether or not we would agree with his ruling were we reviewing a final judgment on appeal, mandamus is not warranted. See *United States v. DiStefano*, 464 F.2d 845, 850 (2d Cir. 1972) (Friendly, J.) (even if "the judge was wrong, indeed very wrong ... that is not enough."). And, to call the issue here so "novel" as to justify resort to an extraordinary writ is to let all particular facts lead to "novel" cases. Countenancing this sort of wholesale resort to mandamus would be completely contrary to our precedents.

The petition for the writ of mandamus is denied.