9 F.3d 230
 62 USLW 2318, Fed. Sec. L. Rep. P 97,818,
27 Fed.R.Serv.3d 726
 In re STEINHARDT PARTNERS, L.P., Steinhardt Management Co.,
Inc., and Michael Steinhardt, Defendants-Petitioners.
SALOMON BROTHERS TREASURY LITIGATION, Plaintiff-Respondent,
v.
STEINHARDT PARTNERS, L.P., Steinhardt Management Co., Inc.,
and Michael Steinhardt, Defendants-Petitioners,
Securities and Exchange Commission, Amicus Curiae.
 No. 873, Docket 93-3079.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 15, 1993.
Decided Nov. 8, 1993.
 
 1
 Frederick P. Schaffer (argued), Schulte Roth & Zabel, New York City, for defendants-petitioners Steinhardt Partners, L.P., Steinhardt Management Co., Inc. and Michael Steinhardt.
 
 
 2
 Theodore V. Wells, Jr., Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for defendant-petitioner Michael Steinhardt.
 
 
 3
 Karen Morris (argued), Morris & Morris, Wilmington, DE, Stanley M. Grossman, Pomerantz Levy Haudek Block & Grossman, Jules Brody, Stull, Stull & Brody, New York City, for plaintiff-respondent Salomon Bros. Treasury Litigation.
 
 
 4
 Paul Gonson, Solicitor, S.E.C., Washington, DC, for amicus curiae S.E.C.
 
 
 5
 Before: NEWMAN, Chief Judge, KEARSE, Circuit Judge, and TENNEY[1], District Judge.
 
 
 6
 TENNEY, Senior District Judge.
 
 
 7
 Defendants-petitioners Steinhardt Partners, L.P., Steinhardt Management Co. and Michael Steinhardt (collectively "Steinhardt") are codefendants with several other parties in a civil class action suit alleging manipulation of the market for two-year Treasury notes during the Spring and Summer of 1991. In answer to a discovery request in the class action suit, Steinhardt identified as responsive a memorandum prepared by its attorneys and previously submitted to the Securities and Exchange Commission (SEC). Steinhardt declined to produce the memorandum, claiming that the memorandum was attorney work product. Plaintiffs moved to compel production. The district court granted the motion to compel, holding that the prior disclosure of the memorandum to the SEC waived the claim for work product protection. Steinhardt filed this petition for a writ of mandamus to prevent discovery of the document. The court's jurisdiction arises under 28 U.S.C. Sec. 1651 and the petition is denied.
 
 Background
 
 8
 This petition for a writ of mandamus arises out of highly publicized allegations of wrongdoing in the market for Treasury notes. In June 1991, the SEC began an informal investigation of the Treasury markets. As part of this informal investigation, the SEC asked Steinhardt, among many others, to provide certain documents related to its trading activities. In August of 1991, the SEC began a formal investigation of the Treasury markets, and issued subpoenas to Steinhardt and others. Steinhardt complied with these subpoenas.
 
 
 9
 In the Spring of 1992, the SEC's Enforcement Division solicited Steinhardt's views regarding several issues in the investigation. The SEC explained to counsel that it had not yet decided whether to initiate enforcement proceedings against Steinhardt. Apparently, existing case law did not provide complete answers to some of the possible legal bases for an enforcement action in the Treasury markets. After two meetings between the SEC and Steinhardt, the Enforcement Division asked Steinhardt's counsel to submit a memorandum that would address the facts and issues involved in the case and discuss the relevant legal theories. Steinhardt claims that the SEC stated that this would not be a so-called Wells submission, although the SEC's amicus brief now characterizes the memorandum as a Wells submission. See 17 C.F.R. Sec. 202.5(c). We do not address the question of whether the memorandum was in fact a Wells submission, since we do not believe that characterizing the memorandum as such alters our conclusion.
 
 
 10
 Counsel prepared and submitted a memorandum and accompanying exhibits to the SEC on June 26, 1992. A notice reading "FOIA Confidential Treatment Requested" appeared on the document. Steinhardt does not dispute the SEC's assertion that there was no agreement that the SEC would maintain the confidentiality of the memorandum. See Amicus Brief of SEC at 8. To date, the SEC has not brought any enforcement proceedings against Steinhardt related to its trading activities in the Treasury markets during 1991.
 
 
 11
 While the SEC investigated the Treasury markets, civil suits commenced against Steinhardt and numerous other defendants. Now consolidated as a class action, the suits allege various acts of fraud and manipulation in the Treasury markets, and have not reached a hearing on the merits. During discovery, plaintiffs requested all documents previously produced by defendants to any investigating government agency. Steinhardt identified the June 26, 1992 memorandum as responsive to the request, but declined to produce the document, citing the work product doctrine. On June 3, 1993, plaintiffs moved to compel production of the memorandum. After hearing the parties on June 17, 1993, the district court granted the motion to compel on June 30, 1993. Steinhardt promptly filed a petition for mandamus. This court entered a stay of the order compelling production, pending consideration of the petition for mandamus.
 
 Discussion
 I.
 
 12
 As a threshold matter, the court must determine whether it will use mandamus to review the district court's order compelling production of the memorandum. We have consistently expressed reluctance to use mandamus as a means to circumvent the general rule that pretrial discovery orders are not appealable. In re W.R. Grace & Co., 984 F.2d 587, 589 (2d Cir.1993). "Unlike other circuits, we have rarely used the extraordinary writ of mandamus to overturn a discovery order involving a claim of privilege." Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 163 (2d Cir.1992). The circuit will use mandamus to review discovery orders involving a claim of privilege only when:
 
 
 13
 (i) an issue of importance and of first impression is raised; (ii) the privilege will be lost in the particular case if review must await a final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege.
 
 
 14
 W.R. Grace, 984 F.2d at 589, quoting Turner & Newall, 964 F.2d at 163.
 
 
 15
 This dispute presents one of the very rare circumstances permitting the use of mandamus to review a district court order. The circuit has not previously resolved the important question of whether disclosure of attorney work product in connection with a government investigation waives the privilege in later civil discovery. The district courts of the circuit have addressed similar questions, arriving at different results. See Enron Corp. v. Borget, 1990 WL 144879 (S.D.N.Y. Sept. 22, 1990) (no waiver of work product protection); Teachers Ins. & Annuity Ass'n v. Shamrock Broadcasting Co., 521 F.Supp. 638 (S.D.N.Y.1981) (disclosure to SEC waived attorney-client privilege); Byrnes v. IDS Realty Trust, 85 F.R.D. 679 (S.D.N.Y.1980) (applying Eighth Circuit law and holding attorney-client privilege not waived); GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46 (S.D.N.Y.1979) (no waiver of work product protection). The circuits have also split on this issue. Compare Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414 (3rd Cir.1991) (waiver of work product and attorney-client privilege upon voluntary disclosure of information to SEC and Department of Justice) and In re Subpoenas Duces Tecum, 738 F.2d 1367 (D.C.Cir.1984) (waiver of work product and attorney-client privilege upon voluntary disclosure of information to SEC) with Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 606 (8th Cir.1977) (en banc) (no waiver of attorney-client privilege).
 
 
 16
 In addition, the alleged privilege will be lost if review must await final judgment. Disclosure of the memorandum will destroy the alleged privilege and moot the question. As to the final part of the Turner & Newall test, Steinhardt's argument that the district court's order will lead to discovery practices undermining the privilege is not a mere conclusory allegation, but is supported by the decisions of at least one circuit. See Diversified, 572 F.2d at 611. Given the fact that this court is yet to resolve this important issue, a decision from at least one circuit supporting petitioner's argument that the district court's order undermines the privilege, and the need for immediate resolution before the alleged privilege is lost, this petition satisfies the conditions of the Turner & Newall test.
 
 II.
 
 17
 On the merits, we apply a stringent standard of review to petitions for mandamus. The petitioner must show that he or she lacks an adequate alternative means to obtain the relief sought, and must demonstrate a clear and indisputable right to the issuance of the writ, amounting to a clear abuse of discretion or a usurpation of judicial power. Mallard v. United States District Court, 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989). This standard requires a showing of an "extreme need for reversal." In re Weisman, 835 F.2d 23, 27 (2d Cir.1987). It is not enough that the court of appeals might disagree with the district judge's decision were it a conventional appeal from a final judgment. Id. " '[E]ven if the judge was wrong, indeed very wrong ... that is not enough.' " Id., quoting United States v. DiStefano, 464 F.2d 845, 850 (2d Cir.1972).
 
 
 18
 In considering the merits, we do not address the question of whether the memorandum actually constituted attorney work product. The record does not state that the district judge conducted an in camera review of the memorandum to determine whether it was indeed work product. Believing the question of waiver dispositive of the motion, the district court stated that "[t]he present motion involves only whether the protection of the work-product doctrine has been waived as to the Memorandum, not whether the protection ever existed." A66. The record indicates that in the district court, plaintiffs did not dispute the fact that the memorandum constituted attorney work product. See id. Since the issue was not raised in the district court, we accept the district court's assumption that the memorandum includes the mental impressions, conclusions, opinions, or legal theories of an attorney within the meaning of Fed.R.Civ.P. 26(b)(3).
 
 
 19
 The district court found that Steinhardt had disclosed the work product to an adversary, and that the disclosure was voluntary. A65. The district court then held, as a matter of law, that the voluntary disclosure waived the privilege in this subsequent civil suit. The district court followed the analysis of the Westinghouse and In re Subpoenas Duces Tecum opinions that the policy considerations behind the work product doctrine do not merit the creation of an exception to the waiver rule. A69.
 
 
 20
 The district court's finding that Steinhardt voluntarily disclosed the memorandum to an adversary was not erroneous. The court correctly concluded that Steinhardt disclosed the memorandum voluntarily. The declarations submitted by Steinhardt in connection with the motion to compel do not allege that the SEC coerced or required compliance in any way. This case is therefore distinguishable from situations in which disclosure to an adversary is only obtained through compulsory legal process. See generally, In re Subpoenas Duces Tecum, 738 F.2d at 1373.
 
 
 21
 We agree with the district court's conclusion that the SEC stood in an adversarial position to Steinhardt when it requested assistance. See e.g., Westinghouse, 951 F.2d at 1428; In re Subpoenas Duces Tecum, 738 F.2d at 1372. This was not a case in which a party complied with a benign request to assist the SEC in performing its routine regulatory duties. The determinative fact in analyzing the adversarial nature of the relationship is that Steinhardt knew that it was the subject of an SEC investigation, and that the memorandum was sought as part of this investigation. The fact that the request came from the SEC's Enforcement Division further supports the conclusion that this was an adversarial relationship. Even though the SEC's investigation has not resulted in any formal enforcement proceedings against Steinhardt, the presence of an adversarial relationship does not depend on the existence of litigation. Additionally, the fact that Steinhardt cooperated voluntarily does not transform the relationship from adversarial to friendly.
 
 
 22
 Given these findings of fact by the district court, we now turn to its holding that voluntary disclosure to the SEC waived the privilege as a matter of law. The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes. Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 1958, 91 L.Ed. 451 (1947); In the Matter of Grand Jury Subpoenas, 959 F.2d 1158, 1166-67 (2nd Cir.1992). An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information. See Hickman, 329 U.S. at 511, 67 S.Ct. at 1958. "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). "[T]he doctrine grants counsel an opportunity to think or prepare a client's case without fear of intrusion by an adversary." In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2997, 125 L.Ed.2d 691 (1993).
 
 
 23
 Common sense and the practicalities of litigation define the limits of the work product doctrine. Nobles, 422 U.S. at 238, 95 S.Ct. at 2170. Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears. Courts therefore accept the waiver doctrine as a limitation on work product protection. The waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties. See Nobles, 422 U.S. at 239, 95 S.Ct. at 2170; In re John Doe Corp., 675 F.2d 482, 489 (2d Cir.1982).
 
 
 24
 Steinhardt relies on the Eighth Circuit's opinion in Diversified for the proposition that voluntary disclosure of privileged material to an investigatory government agency does not waive the privilege as to subsequent private litigants. The en banc opinion in Diversified addressed this question in the context of the attorney-client privilege, rather than in the context of the work product doctrine. See Diversified, 572 F.2d at 611 n. 4. This is not fatal to Steinhardt's argument, since much of the reasoning in Diversified has equal, if not greater, applicability in the context of the work product doctrine.
 
 
 25
 Examination of conflicting authority and of the purposes of the work product doctrine convinces us that Steinhardt waived any work product protection by voluntarily submitting the memorandum to the SEC. The Diversified opinion based its "selective waiver" theory on the policy consideration that if voluntary disclosure to the SEC waives privilege as to subsequent private litigants, parties might be discouraged from cooperating with governmental investigations. Id.; see also Byrnes, 85 F.R.D. at 688-89. Corporations might also hesitate before initiating an independent investigation of wrongdoing within the corporation when asked to by government authorities. Diversified, 572 F.2d at 611.
 
 
 26
 However, the Supreme Court has rejected attempts to use "the work-product doctrine to sustain a unilateral testimonial use of work-product materials...." Nobles, 422 U.S. at 239-40, 95 S.Ct. at 2170-71. We have previously denied a claim of privilege after a claimant decided to selectively disclose confidential materials in order to achieve other beneficial purposes. In re John Doe Corp., 675 F.2d at 489. Similarly, we now reject Steinhardt's attempt to use the doctrine to sustain the unilateral use of a memorandum containing counsel's legal theories voluntarily submitted to an investigatory body.
 
 
 27
 The D.C. Circuit rejected the selective waiver theory, in part based on the perception that the selective waiver doctrine allows a party to manipulate use of the privilege through selective assertion. Permian Corp. v. United States, 665 F.2d 1214, 1221 (D.C.Cir.1981). We agree that selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage. The Permian court noted that the basis for the attorney-client privilege is that frank communication between attorney and client will be fostered by confidentiality, and that the "privilege ceases when the client does not appear to have been desirous of secrecy.... Voluntary cooperation with government investigations may be a laudable activity, but it is hard to understand how such conduct improves the attorney-client relationship." Id. at 1220-21. "The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." Id. at 1221. Although Permian was limited to a discussion of the attorney-client privilege, the D.C. and Third Circuits applied similar reasoning to work product in In re Sealed Case, 676 F.2d 793 (D.C.Cir.1982), and Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414 (3rd Cir.1991), respectively.
 
 
 28
 Voluntary disclosure is generally made because a corporation believes that there is some benefit to be gained from disclosure. See generally, James D. Cox, Insider Trading Regulation and the Production of Evidence, 64 Wash.U.L.Q. 421 (1986) (analyzing market incentives for disclosure of positive and negative information). The SEC's amicus brief argues convincingly that the protection of privilege is not required to encourage compliance with SEC requests for cooperation with investigations. See Amicus Brief of SEC at 20-25. The SEC has continued to receive voluntary cooperation from subjects of investigations, notwithstanding the rejection of the selective waiver doctrine by two circuits and public statements from Directors of the Enforcement Division that the SEC considers voluntary disclosures to be discoverable and admissible. See id. at 3, 20-25; SEC Form 1662.
 
 
 29
 The D.C. Circuit recognizes that a corporation has substantial incentives to cooperate with SEC requests for assistance. Voluntary cooperation offers a corporation an opportunity to avoid extended formal investigation and enforcement litigation by the SEC, the possibility of leniency for prior misdeeds, and an opportunity to narrow the issues in any resulting litigation. In re Subpoenas Duces Tecum, 738 F.2d at 1369; In re Sealed Case, 676 F.2d at 801; see In re Worlds of Wonder Securities Litigation, 147 F.R.D. 208, 213 (N.D.Cal.1992). These incentives exist regardless of whether private third party litigants have access to attorney work product disclosed to the SEC. "When a corporation elects to participate in a voluntary disclosure program like the SEC's, it necessarily decides that the benefits of participation outweigh the benefits of confidentiality.... It forgoes some of the traditional protections of the adversary system in order to avoid some of the traditional burdens that accompany adversary resolution of disputes, especially disputes with such formidable adversaries as the SEC." In re Subpoenas Duces Tecum, 738 F.2d at 1372; quoting In re Sealed Case, 676 F.2d at 822-23.
 
 
 30
 Petitioner alleges that a denial of the petition will present those in similar situations with a Hobson's choice between waiving work product protection through cooperation with investigatory authorities, or not cooperating with the authorities. Whether characterized as forcing a party in between a Scylla and Charybdis, a rock and a hard place, or some other tired but equally evocative metaphoric cliche, the "Hobson's choice" argument is unpersuasive given the facts of this case. An allegation that a party facing a federal investigation and the prospect of a civil fraud suit must make difficult choices is insufficient justification for carving a substantial exception to the waiver doctrine.
 
 
 31
 In denying the petition, we decline to adopt a per se rule that all voluntary disclosures to the government waive work product protection. Crafting rules relating to privilege in matters of governmental investigations must be done on a case-by-case basis. Upjohn Co. v. United States, 449 U.S. 383, 396, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981); see In re Six Grand Jury Witnesses, 979 F.2d at 944 (work product doctrine to be applied in a common sense manner in light of reason and experience as determined on a case-by-case basis). Establishing a rigid rule would fail to anticipate situations in which the disclosing party and the government may share a common interest in developing legal theories and analyzing information, or situations in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will maintain the confidentiality of the disclosed materials. See In re Sealed Case, 676 F.2d at 817 (work product protection only waived if privileged material is disclosed to a party who doesn't share such common interests); In re LTV Securities Litigation, 89 F.R.D. 595, 614-15 (N.D.Tex.1981) (SEC and corporation shared interest in analyzing facts and legal theories upon appointment of an independent special investigatory officer by consent decree).
 
 Conclusion
 
 32
 At the time of the submission of the memorandum to the Enforcement Division, the SEC and Steinhardt stood in an adversarial position. Steinhardt's voluntary submission of the memorandum to the Enforcement Division waived the protections of the work product doctrine as to subsequent civil litigants seeking the memorandum from Steinhardt.
 
 
 33
 The petition is denied and the stay is lifted.
 
 
 
 [1]
 The Honorable Charles H. Tenney, Senior United States District Judge for the Southern District of New York, sitting by designation