**In re the LESLIE FAY COMPANIES, INC. SECURITIES LITIGATION.**

**This Document Relates To: All Actions.**

**No. 92 Civ. 8036 (WCC).**

United States District Court, S.D. New York.

Dec. 22, 1993.

Abbey & Ellis, New York City (Arthur N. Abbey, Mark C. Gardy, Stephen J. Fearon, Jr., of counsel), Chairman of Plaintiffs' Executive Committee.

Weil, Gotshal & Manges, New York City (Dennis J. Block, Jonathan M. Hoff, of coun-

sel), for Ralph Destino, Ira J. Hechler and Michael L. Tarnopol (The Audit Committee of the Bd. of Directors of the Leslie Fay Companies, Inc.)

### OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This discovery dispute arises in the context of a class action brought on behalf of all individuals who purchased common stock of the Leslie Fay Co., Inc. ("Leslie Fay" or "the Company") between February 4, 1992 and April 5, 1993. The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, and asserts claims for aiding and abetting securities fraud against a number of Leslie Fay's officers and directors (collectively "Individual Defendants") and BDO Seidman ("BDO"), the Company's outside auditor.

On October 22, 1993, this Court denied BDO's motion to dismiss, and on October 27, 1993, we denied the motion to dismiss brought by several of the Individual Defendants. Familiarity with these opinions is assumed.[1]

The action is now before the Court on plaintiffs' motion to compel production of a report ("the Report") generated by Leslie Fay's Board of Directors' Audit Committee ("the Audit Committee" or "the Committee"). For reasons discussed below, Plaintiffs' motion is granted.[2]

### BACKGROUND

For purposes of this motion, the relevant undisputed facts are as follows.

On January 31, 1993, the Board of Directors of Leslie Fay was informed of certain accounting irregularities with respect to the Company's financial statements. The Board of Directors requested its Audit Committee to commence an investigation and report back to the Board following completion of this investigation.

The Audit Committee, consisting of four outside directors, retained the law firm of Weil, Gotshal, & Manges ("Weil, Gotshal") to assist in the investigation. Weil, Gotshal, in turn, retained the accounting firm of Arthur Anderson & Co. for assistance.

On February 1, 1993, Leslie Fay publicly announced the commencement of this Audit Committee investigation and stated that the results might cause the Company to restate previously reported earnings for 1991 and eliminate any profit for 1992. On the same day, the first of thirteen shareholder class action lawsuits was filed against the Company, its officers and directors, and BDO.

Shortly thereafter, Leslie Fay was informed by the Securities & Exchange Commission (SEC), the United States Attorney's Office for the Middle District of Pennsylvania (USAO/MDPA), and the United States Attorney's Office for the Southern District of New York (USAO/SDNY) that they had commenced investigations into the accounting irregularities. At the outset of these government investigations, the Audit Committee agreed to provide the SEC and U.S. Attorneys with copies of the Report upon completion of its investigation.

On April 5, 1993, Leslie Fay filed a voluntary petition for protection under the bankruptcy laws, and pursuant to the automatic stay provisions of the Bankruptcy Code, all litigation against the Company has been stayed.[3]

On September 29, 1993, Leslie Fay issued a press release announcing the completion of the Audit Committee's Report. Leslie Fay thereafter disclosed the Report to the SEC, USAO/MDPA, and USAO/SDNY. The Audit Committee requested that these government offices keep the Report confidential. The Report was also disclosed to professionals representing the Creditors Committee in

---

1. *See* 835 F.Supp. 167 (S.D.N.Y.1993); 1993 WL 438927 (S.D.N.Y.1993).

2. Pursuant to the terms of the Stipulation and Order for the Production and Exchange of Confidential Information "SO ORDERED" by the Court on August 30, 1993, plaintiffs may only use

the Report for the purposes of the present securities action. If needed, the Court is willing to issue an additional protective order to that effect.

3. Leslie Fay is no longer named as a defendant in the instant case.

Leslie Fay's Bankruptcy Proceedings, pursuant to stipulation to maintain the confidentiality of the Report. Plaintiffs now seek discovery of the Report.

## DISCUSSION

The Audit Committee's first argument in opposition to production is that the Report is immune from discovery because it constitutes attorney work product. The work product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that documents "prepared in anticipation of litigation" are not discoverable unless the party seeking discovery shows a "substantial need" for the materials and cannot obtain them without "undue hardship." The protection may be invoked only if the documents were prepared in anticipation of litigation. *E.g., Matter of Grand Jury Subpoenas*, 959 F.2d 1158, 1166 (2d Cir.1992).

After reviewing the Report *in camera*, we are inclined to find that the Report constitutes attorney work product. The Report is the result of numerous interviews conducted by Weil, Gotshal, and litigation was pending against Leslie Fay throughout the internal investigation. However, the Court finds it unnecessary to reach this decision because we find that the Audit Committee waived any work product immunity it may have had when it voluntarily disclosed the Report to the SEC without first obtaining a confidentiality agreement.

The instant case is governed by the recent Second Circuit decision in *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir.1993). *Steinhardt* involved a class action alleging manipulation of the Treasury market. Plaintiff moved to compel production of a memorandum prepared by Steinhardt's attorneys that was submitted to the SEC. 9 F.3d at 232. This document was prepared pursuant to a request by the SEC, which was investigating Steinhardt at the time, to submit a memorandum (akin to a "Wells submission") that would address the facts, issues and legal theories involved in the case. *Id.* at 232. The document was stamped with a notice reading "FOIA Confidential Treatment Re-

quested," but there was no agreement that the SEC would maintain the confidentiality of the memorandum. *Id.* at 232. The district court found that Steinhardt waived its work product immunity when it voluntarily submitted the document to an adversary (the SEC). *Id.* at 234. The Second Circuit granted Steinhardt's petition for a writ of mandamus to "resolve the important question of whether disclosure of attorney work product in connection with a government investigation waives the privilege in later civil discovery." *Id.* at 233.

The Second Circuit first affirmed the district court's finding that Steinhardt's disclosure was voluntary. Steinhardt had disclosed the document pursuant to a request—not compulsion—and Steinhardt had not alleged that the disclosure was coerced. *Id.* at 234.

The Court of Appeals then found that Steinhardt and the SEC were adversaries at the time the SEC requested assistance, despite the fact that the SEC had not commenced any formal enforcement proceedings against Steinhardt. "The determinative fact in analyzing the adversarial nature of the relationship is that Steinhardt knew that it was the subject of an SEC investigation, and that the memorandum was sought as part of this investigation." *Id.* at 234. The court also pointed out that the request had originated in the SEC Enforcement Division. *Id.* Finally, the court found that this relationship was not transformed "from adversarial to friendly" simply because Steinhardt's cooperation was voluntary. *Id.*

Given that Steinhardt's disclosure to the SEC was both voluntary and made to an adversary, the Second Circuit applied the waiver doctrine and held that the disclosure constituted a waiver of the attorney work product protection. In doing so, *Steinhardt* refused to create an exception to the waiver doctrine for disclosures to investigatory government agencies. *Id.* at 235. The Court of Appeals declined to follow the Eighth Circuit opinion in *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 606 (8th Cir.1977) (en banc), which created such an exception based on the policy consideration that corporations might be discouraged from cooperating with

governmental investigations if no exception is permitted. The Second Circuit explained that the exception is not necessary because voluntary disclosures are generally made when a corporation believes it will benefit from disclosure, *id.* at 235, and, particular to SEC investigations, "[v]oluntary cooperation offers a corporation an opportunity to avoid extended formal investigation and enforcement litigation by the SEC, the possibility of leniency for prior misdeeds, and an opportunity to narrow the issues in any resulting litigation." *Id.* at 235.

The instant case is no different from *Steinhardt.*

First, the Audit Committee is not contending that its production of the Report to the SEC was anything but voluntary. On the contrary, the Committee repeatedly asserts that it was working with the SEC toward the common goal of discovering fraud at Leslie Fay. Thus we find that the disclosure was voluntary.

Second, as in *Steinhardt,* the Audit Committee and the SEC stood in an adversarial position when the Committee produced the Report to the SEC. At the time of disclosure the Committee knew that Leslie Fay was the subject of an SEC investigation and that the Report would assist the SEC in that investigation, and the SEC's request for the Report came from the SEC Enforcement Division.

The Audit Committee argues that the SEC was not an adversary because the Committee shared the SEC's interest in determining the extent of fraud at Leslie Fay. The Committee suggests that the Company anticipates using the Report to commence litigation against the same third parties that the SEC is likely to pursue. We are not persuaded. While it may be true that the Company and the SEC anticipated litigation against a common adversary, the fact remains that at the time of disclosure, the Company itself was the subject of the SEC investigation. This

fact, according to the Second Circuit, is "the determinative fact in analyzing the adversarial nature of the relationship." *Id.* The Audit Committee's voluntary cooperation with the SEC does not change the adversarial nature of their relationship. *Id.*

The Audit Committee also argues that the instant case is distinguishable from *Steinhardt* because the Committee and the SEC entered into a confidentiality agreement before the Committee disclosed the Report. The Audit Committee points to the last paragraph of *Steinhardt,* in which the Second Circuit states that it is declining to adopt a per se rule that every voluntary disclosure to the government constitutes a waiver, because such a rule would "fail to anticipate ... situations in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will maintain the confidentiality of the disclosed materials." *Id.* at 236. We find it unnecessary to decide the question left open by the Court of Appeals, i.e., whether a confidentiality agreement with the SEC would avoid waiver, because we find that contrary to the Audit Committee's assertion, the SEC never agreed to maintain the confidentiality of the Report.[4]

The Audit Committee apparently submitted a written request to the SEC on October 4, 1993, to maintain the confidentiality of the Report.[5] The SEC's Division of Enforcement responded by letter dated October 6, 1993, which reads in relevant part:

The staff is in receipt of your letter, dated October 4, 1993, wherein you propose certain treatment of the Report of the Audit Committee of the Board of Directors of the Leslie Fay Companies, Inc. Upon consideration of your letter, the staff will *not accept or agree* to the terms set forth therein.

Documents produced by the Audit Committee ... will be used in accordance with the List of Routine Uses printed at pages 3 and 4 of the Form 1662.... Your letter

---

4. The Audit Committee also asserts that it obtained confidentiality agreements from the USAO/SDNY, USAO/MDPA, and the Creditors Committee. We find it unnecessary to decide these issues as the failure to obtain an agreement from the SEC waives the privilege, regardless of

the existence of any other confidentiality agreement.

5. We were not provided with a copy of this request.

of October 4, 1993 will be treated as a request for confidential treatment pursuant to 17 C.F.R. § 200.83. Note that section 200.83 applies only to requests made pursuant to the Freedom of Information Act and the procedures described therein. To the extent your letter requests confidential treatment or notification beyond what is provided in Section 200.83, the staff does *not agree* to those requests.

However, the staff agrees not to assert that the submission of the Report to the staff constitutes a waiver by the Audit Committee of any rights under the attorney-client privilege, work-product doctrine or any other applicable privilege or doctrine.

The staff has made *no agreement* with respect to the treatment, or effect of the submission, of the Report other than that contained herein. (emphasis added)

The letter could not be more explicit: the SEC declined the Audit Committee's invitation to enter into a confidentiality agreement concerning the Report. Rather, just as in *Steinhardt,* pursuant to 17 C.F.R. § 200.83 the Report will simply be stamped with a notice reading "FOIA Confidential Treatment Requested."[6] The SEC's agreement in the third paragraph "not to assert" that disclosure of the Report constitutes a waiver is inconsequential: the SEC is not in a position to decide what constitutes a waiver, and the fact that it did not submit an amicus brief in this proceeding to argue about waiver (pursuant to its "agreement") is wholly irrelevant.[7]

---

6. 17 C.F.R. § 200.83 states in pertinent part: (a) Purpose. This section provides a procedure by which persons submitting information in any form to the Commission can request that the information not be disclosed pursuant to a request under the Freedom of Information Act, 5 U.S.C. 552. This section does not affect the Commission's right, authority, or obligation to disclose information in any other context. This section is procedural only and does not provide rights to any person or alter the rights of any person under the Freedom of Information Act or any other applicable statute or regulation.

7. The court finds it unnecessary to address the Audit Committee's additional arguments that the Report is protected by the attorney-client and critical self-analysis privileges because we find that these, too, were waived when the Committee

## CONCLUSION

For the foregoing reasons plaintiffs' motion to compel production of the Audit Committee's Report is hereby granted. The Audit Committee is ordered to produce a copy of the Report, including all accompanying exhibits and schedules, within one week from the date of this order.

**SO ORDERED.**

---

disclosed the Report to the SEC. *See, e.g., Steinhardt,* 9 F.3d at 235 (in finding waiver of work-product, relied on *Permian Corp. v. United States,* 665 F.2d 1214, 1221 (D.C.Cir.1981), which applied the waiver doctrine to the attorney-client privilege); *In re John Doe Corp.,* 675 F.2d 482, 488–89 (2d Cir.1982) (applied waiver doctrine to attorney-client privilege).

The Audit Committee also argues that plaintiffs must apply to the Bankruptcy Court to obtain relief from the automatic stay before they can obtain a copy of the Report. As indicated during the Pre–Motion Conference on November 12, 1993, we find this argument without merit because Leslie Fay is not a named defendant in this case, and production of the Report will involve no cost to the Company.