*American Oversight v. U.S. Dep't of Just.*

# In the
# United States Court of Appeals
# for the Second Circuit

————

AUGUST TERM 2021

No. 21-1266-cv

AMERICAN OVERSIGHT,

*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF

INVESTIGATION,

*Defendants-Appellees.*

————

On Appeal from the United States District Court
for the Southern District of New York

————

ARGUED: MAY 18, 2022

DECIDED: AUGUST 16, 2022

————

Before: RAGGI, WESLEY, and CARNEY, *Circuit Judges.*

————

In this Freedom of Information Act ("FOIA") lawsuit filed in the Southern District of New York (Schofield, J.), plaintiff seeks to compel defendants to produce notes and memoranda memorializing interviews conducted by federal prosecutors and law enforcement

agents in the course of a criminal investigation. Plaintiff now appeals an award of summary judgment in favor of defendants, arguing that the district court erred in holding that the requested documents are "attorney work product" shielded from production by FOIA Exemption 5. It maintains that, at least as to interviewed "targets" and "subjects" of the investigation, defendants waived attorney-work-product protection for the requested documents by having already disclosed any protected information contained therein to potential litigation adversaries during their interviews. This misperceives both the work-product privilege and what constitutes waiver by disclosure in the circumstances of this case.

AFFIRMED.

---

KATHERINE M. ANTHONY (John E. Bies, Emma Lewis, Sarah Colombo, *on the brief*), American Oversight, Washington, DC, *for Plaintiff-Appellant.*

SARAH S. NORMAND, Assistant United States Attorney (Christopher Connolly, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Defendants-Appellees.*

---

REENA RAGGI, *Circuit Judge*:

Plaintiff American Oversight brought this Freedom of Information Act ("FOIA") suit in the United States District Court for

2

the Southern District of New York (Lorna G. Schofield, Judge) to compel defendants, the United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), to disclose notes and memoranda memorializing interviews conducted by federal prosecutors and law enforcement agents in the course of a criminal investigation into possible campaign-finance-law violations, and subsequent obstruction of justice, by persons associated with the Donald J. Trump 2016 presidential campaign (the "Investigation").[1] On the parties' cross-motions for summary judgment, the district court ruled in favor of defendants, holding that the documents at issue were attorney work product, shielded from production by FOIA Exemption 5. *See American Oversight v. DOJ*, No. 19-CV-8215, 2021 WL 964220 (S.D.N.Y. Mar. 15, 2021).

In appealing that judgment, American Oversight now narrows its production demand. It no longer seeks production of all interview notes and memoranda generated during the Investigation. Rather, it seeks such documents only for interviews with "targets" or "subjects" of the Investigation.[2] It argues that because such persons were potential litigation adversaries of defendants at the time of the interviews, defendants necessarily waived any work-product

[1] Because the obstruction investigation appears to have grown out of the campaign-finance-law investigation, we refer to them as one in this opinion.

[2] As American Oversight acknowledges, "targets" and "subjects" are terms of art in the context of DOJ investigations, with (1) "target" defined as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant"; and (2) "subject" defined as "a person whose conduct is within the scope of the grand jury's investigation." DOJ, *Justice Manual* § 9-11.151 (2020). Because we understand the parties to use "target" and "subject" as so defined, we do likewise in this opinion, unless otherwise noted.

protection for the requested documents by disclosing information that would be memorialized therein to these adversaries during their interviews. The argument misperceives the work-product privilege and what would constitute its waiver by disclosure to a litigation adversary in the circumstances of this case.

For the reasons explained in this opinion, we conclude that (1) defendants have shown that the documents at issue are work product protected from disclosure by FOIA Exemption 5, and (2) American Oversight has failed to demonstrate defendants' waiver of work-product protection. Accordingly, we affirm the challenged judgment in favor of defendants.

## BACKGROUND

The background facts pertinent to this appeal derive largely from the sworn declarations of government officials in support of defendants' motion for summary judgment and from matters of which we may take judicial notice. The declarations are those of (1) Thomas McKay, an Assistant United States Attorney ("AUSA") in the Southern District of New York ("SDNY"); (2) Ebony Griffin, a FOIA Attorney-Advisor with DOJ's Executive Office for United States Attorneys; and (3) Michael Seidel, Acting Section Chief of the FBI Record/Information Dissemination Section, Information Management Division. In FOIA cases, courts accord such declarations "a presumption of good faith," *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (internal quotation marks omitted), such that, at least as to unchallenged facts asserted therein, the declarations can be relied on to support an award of summary judgment, *see Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (stating that

4

summary judgment may be granted to government on basis of its own affidavits if they are sufficiently detailed and "not called into question by contradictory evidence in the record or by evidence of agency bad faith" (internal quotation marks omitted)).

## I.  The Investigation

Between 2018 and 2019, DOJ prosecutors in the SDNY, working in conjunction with agents of the FBI, conducted the Investigation here at issue.  A single prosecution resulted, that of Trump Organization attorney Michael Cohen.  On August 21, 2018, Cohen pleaded guilty to an eight-count information charging him with violations of campaign-finance, tax, and financial-fraud laws insofar as he (1) paid money to two women in amounts exceeding individual campaign contribution limits;[3] (2) issued those payments from a corporation in violation of the prohibition on corporate campaign contributions; and, unrelatedly, (3) evaded personal income tax liability; and (4) made false statements to a bank to secure a loan. Prior to this FOIA action, defendants had never publicly identified any persons—other than Cohen—interviewed in the course of the

---

[3] The alleged campaign contributions were payments of more than $100,000 each to purchase the rights to two women's stories of claimed affairs with Donald Trump, which payments were intended to prevent such stories from influencing the 2016 presidential election.  *See* Gov't Sentencing Mem., *United States v. Cohen*, No. 1:18-CR-602, ECF No. 27, at 11–14 (S.D.N.Y. Dec. 7, 2018).

Investigation, much less identified any such persons as "targets" or "subjects."[4]

## II.   The FOIA Request

American Oversight describes itself as a "nonpartisan, nonprofit watchdog that uses public records requests backed by litigation to fight corruption, drive accountability, and defend democracy."[5]  On July 22, 2019, it filed with both DOJ and the FBI the FOIA request here at issue.  Therein, American Oversight sought production of the following materials:

> 1. All FBI form 302s reflecting the content of all interviews conducted as a part of the government's investigation of potential campaign finance violations committed by President Trump, the Trump Organization, Michael Cohen, or others representing President Trump or the Trump Organization, as well as any other investigation of other potential violations related to that investigation (including, for example, obstruction of justice). . . .

---

[4] Defendants advise that certain persons—Cohen, Keith Davidson, and John Gauger—themselves publicly acknowledged being interviewed.  *See infra* at 9.  Press reports also identified—although defendants never confirmed—that persons interviewed in connection with the Investigation included former White House Communications Director Hope Hicks and former Director of Oval Office Operations Keith Schiller.  *See* N. Hong, R. Ballhaus, & R. Davis O'Brien, *Hush-Money Probe Gathered Evidence from Trump's Inner Circle*, Wall St. J. (Apr. 10, 2019), https://www.wsj.com/articles/hush-money-probe-gathered-evidence-from-trumps-inner-circle-11554897911.

[5] *See* About, American Oversight, http://www.americanoversight.org/about (last visited Aug. 15, 2022).

2. All other records intended to summarize, memorialize, or record witness interviews or witness statements collected or used in the investigation(s) described in Item 1, including written proffers, written summaries of oral proffers, transcripts or recordings of any witness interviews or statements, and any other record summarizing, memorializing, or reproducing the content of witness interviews or statements collected or used in connection with the above-described investigation.

J. App'x at 18–19. American Oversight requested such materials for the period from September 1, 2016, through the date of search and asked that they be produced "at least within twenty business days." *Id.* It submitted that expedited production was warranted by "widespread and exceptional media interest" in the Investigation and "possible questions concerning the government's integrity" in conducting it, particularly "public concerns that DOJ has not pursued criminal charges against [then-President Trump] because of his position of power rather than the absence of evidence of his guilt." *Id.* at 21–22.

### III.    The FOIA Action

#### A.  The Complaint

On September 4, 2019, after defendants still had not produced the requested materials, American Oversight commenced this lawsuit, charging defendants with violating the FOIA and requesting an order that, among other things, would direct defendants (1) to

7

conduct the necessary searches expeditiously, and (2) to produce "any and all non-exempt records responsive to American Oversight's FOIA request and indexes justifying the withholding of any responsive records withheld under claim of exemption." *Id.* at 16. In their October answer, defendants stated that they "had not completed processing of the FOIA request," *id.* at 29, and asserted as a defense that "[s]ome or all of the requested records and information are exempt from disclosure, in whole or in part," *id.* at 31.

## B. The Withheld or Redacted Documents

The parties subsequently conferred, whereupon, on February 7, 2020, DOJ—acting on behalf of both defendants—identified 30 responsive documents, five of which it produced in part and 25 of which it withheld in full. On June 19, 2020, DOJ produced redacted versions of two previously withheld documents. To justify its withholdings and redactions, DOJ invoked FOIA Exemptions 3, 5, 6, 7(A), 7(C), and 7(E). *See* 5 U.S.C. § 552(b). American Oversight agreed not to challenge these exemptions as to three of the 30 identified documents, leaving 27 at issue.

AUSA McKay described the 27 disputed documents as interview records, of which 21 are Form FD-302s ("302s") produced by FBI special agents;[6] three are interview memoranda prepared by SDNY special agents; and three are handwritten notes, two prepared

---

[6] An FBI guide referenced by the parties indicates that agents use 302s to memorialize interviews "[w]hen it is anticipated that the results of an interview may become the subject of court testimony." *See* FBI, *Domestic Investigations and Operations Guide* § 18-33 (Mar. 3, 2016). The guide further states that 302s "must contain a record of statements made by the interviewee and not contain the interviewer's opinion or contextual comments." *Id.*

by prosecutors and one by an FBI special agent. McKay Decl. ¶ 11. McKay further stated that for "22 of the 27" memorialized interviews, "prosecutors conducted the questioning." *Id.* ¶ 14. The other five interviews were conducted by agents (with a prosecutor participating in one such interview by telephone), but only after discussions with prosecutors as to "the topics to be covered and certain questions to be asked." *Id.*

In terms of substantive information, the redacted documents disclose the identity of three interviewees—Michael Cohen, Keith Davidson, and John Gauger—who had already publicly acknowledged being interviewed. The documents further reveal that Cohen and Davidson were interviewed pursuant to "proffer agreements."[7] Redactions otherwise delete from the documents the contents of these persons' interviews, except for the following previously published statement by Cohen:

> COHEN did not want the payments to "come out," and COHEN felt that, after the search of his premises, he was "an open book[.]" COHEN felt that his false statements to the House of Representatives and the Senate were "a big concern."

J. App'x at 158.[8]

---

[7] Such agreements frequently afford an interviewee use immunity for statements made during the interview. *See, e.g., United States v. Blau*, 159 F.3d 68, 71 (2d Cir. 1998); *United States v. Cruz*, 156 F.3d 366, 368 (2d Cir. 1998).

[8] Defendants advise that the statement was published in Special Counsel Robert Mueller's 2019 "Report on the Investigation into Russian Interference in the 2016 Presidential Election."

9

## C. Summary Judgment Motions

The parties cross-moved for summary judgment. In support of their motion, defendants argued, *inter alia*, that the 27 interview records at issue were attorney work product, shielded from production by FOIA Exemption 5.[9] To support their claim, defendants primarily relied on AUSA McKay's declaration, which states in relevant part that the withheld interview records "were prepared in anticipation of litigation." McKay Decl. ¶ 13.

> Specifically, prosecutors and/or Special Agents acting at the substantial direction of prosecutors conducted these interviews in connection with the prosecutors' evaluation of whether criminal prosecutions were warranted. The interviews were recorded [*i.e.*, memorialized in writing] to gather and assess the extent to which evidence could be obtained to support criminal charges and that could be presented to a grand jury or at trial. The prosecutors anticipated the

---

[9] We focus here on Exemption 5 because it was the basis for the district court's judgment. Defendants also invoked FOIA Exemptions 6 and 7(C), which shield certain records, "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6), (b)(7)(C). They did not rely on FOIA Exemptions 3, 7(A), or 7(E) despite invoking them earlier. Exemption 7(A), which pertains to any law enforcement record—not just work product—the disclosure of which "could reasonably be expected to interfere with enforcement proceedings," *id.* § 552(b)(7)(A), might well have shielded the disputed documents during the life of the Investigation. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d at 485 n.5 ("[Exemption 7(A)] is not applicable in the absence of some evidence that 'enforcement proceedings' are actually being conducted."); *see also Citizens for Resp. & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) (holding that Exemption 7(A) does not apply after investigation concludes). But with the Investigation now seemingly concluded, defendants rely on Exemption 5, which shields work product even "after termination of the litigation for which the documents were prepared." *FTC v. Grolier Inc.*, 462 U.S. 19, 25–27 (1983).

potential for criminal charges during the investigation and at the time the witness interviews leading to the creation of interview records were conducted. The records were generated because of the prospect of litigation.

*Id.*

McKay further states that "[d]isclosure of the interview records would reveal the prosecutors' selection of witnesses to interview, as well as their mental impressions, legal theories, case analysis, and strategic decisions." *Id.* ¶ 14. He maintains that "[d]isclosure of the questions asked by prosecutors would reveal the topics discussed (and not discussed) with each witness, the focus and emphasis of the prosecutors, and their thinking about the substance of the case." *Id.*

## D. The Summary Judgment Award for Defendants

On March 15, 2021, the district court denied summary judgment to American Oversight and granted it to defendants, relying exclusively on FOIA Exemption 5. *See American Oversight v. DOJ*, 2021 WL 964220, at *2 (holding documents "properly withheld in full or in part under FOIA Exemption 5 because they are attorney work product prepared in anticipation of litigation"); *id.* at *4 (finding it unnecessary to address arguments pertaining to Exemptions 6 and 7(C)). In so ruling, the district court found that the records (1) had been prepared either by prosecutors or by agents working at the substantial direction of prosecutors; (2) had been prepared in anticipation of litigation; (3) had not been previously disclosed; and (4) that disclosure "would reveal prosecutors' selection of witnesses to interview, as well as their mental impressions, legal theories, case

analysis, and strategic decisions." *Id.* at \*3 (quoting McKay Decl. ¶ 36).

In urging otherwise, American Oversight had argued that the records were not work product because, at the time of their creation, the government anticipated their disclosure during any subsequent prosecutions. The district court was not persuaded, observing that "[d]isclosure obligations are different under the FOIA and in criminal proceedings." *Id.* American Oversight also had argued that the government failed to show that memorializing agents were acting under the substantial direction of prosecutors (as required for non-lawyer memoranda to constitute attorney work product), but the district court found to the contrary based on AUSA McKay's declaration. *See id.* at \*4.

Finally, the district court rejected the argument on which American Oversight primarily relies on this appeal: that DOJ waived any work-product protection "because the content of the interviews necessarily was disclosed to the DOJ's litigation adversaries, the very people who were interviewed." *Id.* at \*3. The district court reasoned that (1) the documents themselves—notes and memoranda memorializing interviews—had never been shared with any interviewees; (2) the documents "necessarily reflect" undisclosed matters such as "the thought process of those who created them—including what is omitted, what is recorded, how it is recorded, how it is characterized, what is emphasized, how it is organized, and so forth"; and (3) releasing the documents "would reveal the never disclosed fact of who were the uncharged subjects and targets" of the investigation. *Id.*

12

After the district court's March 16, 2021 entry of final judgment for defendants, American Oversight timely filed this appeal.

## DISCUSSION

### I. The FOIA and Its Exemptions

We review *de novo* an award of summary judgment in a FOIA case. *See, e.g., New York Times Co. v. DOJ* ("*N.Y. Times v. DOJ*"), 939 F.3d 479, 488 (2d Cir. 2019). In conducting such review here, we are mindful both that FOIA "strongly favor[s] public disclosure of information in the possession of federal agencies" and that an agency withholding documents responsive to a FOIA request bears the burden of showing that a FOIA exemption shields the materials at issue. *Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.* ("*Knight v. USCIS*"), 30 F.4th 318, 327 (2d Cir. 2022).

An agency can carry this burden at the summary judgment stage through sworn declarations that are factually uncontroverted and sufficiently detailed to have the exemption appear "logical and plausible." *Id.* (citation omitted). As this court recently stated in *Knight v. USCIS*,

> Summary judgment is appropriate where the agency declarations describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith.

*Id.* (internal quotation marks omitted). Upon such a showing, a plaintiff who nonetheless seeks to compel disclosure "must make a showing of bad faith on the part of the agency . . . or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney v. DOJ*, 19 F.3d at 812 (citations omitted).

The FOIA affords nine, exclusive exemptions from its otherwise broad disclosure obligations. *See* 5 U.S.C. § 552(b)(1)–(9). In other words, the FOIA is "structured [so that] virtually every document generated by [a federal] agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). Each exemption identifies an important interest—*e.g.,* national security, foreign policy, fair trials, unobstructed criminal investigations, the adversarial process, personal privacy—that "may at times conflict with [the FOIA's] policy of full disclosure," *Halpern v. FBI*, 181 F.3d 279, 286–87 (2d Cir. 1999), but that Congress, nevertheless, deems sufficiently important to "outweigh the need for transparency," *Knight v. USCIS*, 30 F.4th at 321. Because these exemptions limit the broad disclosure otherwise required by the FOIA, we construe them narrowly. *See Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). At the same time, we recognize that the interests served by the exemptions "are as much a part of [the] FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (alterations and internal quotation marks omitted).

14

With these principles in mind, we proceed to consider the exemption here at issue, FOIA Exemption 5; its protection of attorney work product; and defendants' claim to that protection.

## II. FOIA Exemption 5 and Work-Product Protection

FOIA Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has instructed that "[t]he test under Exemption 5" is not whether such documents might *ever* be disclosed in civil litigation, but "whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983). Thus, "[c]ourts universally read [Exemption 5] to mean that agency documents that would be privileged in ordinary civil discovery are also protected from disclosure under FOIA." *N.Y. Times v. DOJ*, 939 F.3d at 488.

Among the documents that would be privileged in ordinary civil discovery are those constituting "attorney work product." *Id.*[10] On this point, the Supreme Court has observed that "Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 154 (citing S. Rep. No. 813, 89th Cong., 1st Sess., 2 (1965)). Moreover, Congress contemplated that such work-product protection would

---

[10] It has been observed that the protection afforded attorney work product is not a "true privilege[]" because it can be overcome upon a showing of need. E. Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges* § 1.3.11 (4th ed. 2022); *see infra* at 20–21 (discussing need showing). "Nevertheless, like most courts, we will for convenience" sometimes refer to the protection afforded attorney work product by law as a "privilege." *N.Y. Times v. DOJ*, 939 F.3d at 489 n.4.

15

extend to government attorneys. *See id.* (citing Senate Report and case law in concluding that Exemption 5 protection for work product applies to working papers of government attorneys).

### A. *Hickman v. Taylor*

By comparison to evidentiary privileges such as the attorney-client or spousal privileges, which derive from common law, attorney-work-product protection was recognized only in the last century. The trigger was the adoption of the Federal Rules of Civil Procedure, which took effect in 1938. While these rules established "liberal discovery mechanisms" to streamline the production of evidence in civil litigation, they gave rise to a concern that "if litigators aggressively employed their new discovery tools, that development would reduce attorneys' incentive to gather all relevant data" because of a "fear that they might be gathering damning evidence that they would later have to surrender to the opposition." E. Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges* § 1.3.11 (4th ed. 2022) [hereinafter "*Wigmore: Evidence*"].

The Supreme Court first addressed this concern in *Hickman v. Taylor*, 329 U.S. 495 (1947). The Court there recognized that "[p]roper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 511. The Court observed that these efforts are "reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" aptly termed attorney "work product." *Id.* The Court concluded that

16

the compelled disclosure of such attorney work product would have a seriously detrimental effect on the adversarial system, which itself plays a critical role in the administration of justice:

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* To safeguard against such consequences, the Supreme Court read into the fledgling Rules of Civil Procedure an implicit protection for "the 'Work product of the lawyer,'" shielding it from discovery. *Id.* at 511–12.

The documents afforded work-product protection in *Hickman* were signed statements and (as here) interview memoranda, which the attorney for a tugboat owner had gathered from survivors of, or witnesses to, a fatal tugboat accident. In subsequent litigation, decedents' representatives sought discovery of the documents. The attorney refused and was held in contempt. Although the contempt was reversed on appeal, the Supreme Court agreed to review the case in light of "[t]he importance of the [discovery] problem, which has engendered a great divergence of views among district courts." *Id.* at 500.

Observing that the demanded documents were not protected by the attorney-client privilege, *see id.* at 508 (explaining that attorney's communications had been with third parties, not clients), the Supreme Court nevertheless unanimously ruled them "outside the arena of discovery," reasoning that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney," *id.* at 510. The Court explained that an attorney's ability to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," is "essential to an orderly working of our system of legal procedure." *Id.* at 510, 512; *see also id.* at 516 (Jackson, J., concurring) (observing that, in adversarial system, "[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary"). Deeming it "instrumental" to the adversarial system and, therefore, to the administration of justice, that "attorneys have the maximum incentive to prepare for trial by creating and gathering useful litigation-related material," the Court in *Hickman* shielded such material from civil discovery. *Wigmore: Evidence* § 1.3.11.[11]

In so ruling, *Hickman* clarified the scope of the nascent work-product doctrine in two instructive ways. *First*, the Court recognized a broad range of materials to constitute attorney work product: "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible [things]." *Hickman v. Taylor*, 329 U.S. at 511. In short, the

---

[11] The Supreme Court later acknowledged that the work-product doctrine also applies in the criminal context, observing that its "role in assuring the proper functioning of the criminal justice system is even more vital." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

Court did not limit work product to materials that specifically memorialized an attorney's legal theories and strategy. Rather, it recognized work product also to include factual materials assembled by an attorney, such as the signed survivor statements and witness interview memoranda there collected by the tugboat owner's attorney. *See id.* *Second*, the Court instructed that, while work-product protection shielded this broad range of materials, the protection it afforded was not absolute. Rather, "discovery [of work product] may properly be had" upon a showing of sufficient need. *Id.* The "burden," however, "rests on the one who would invade [attorney] privacy to establish adequate reasons to justify production" of work product. *Id.* at 512.

## B. Rule 26(b) Codifies the Work-Product Doctrine

*Hickman*'s identification of implicit work-product protection in the then-existing Federal Rules of Civil Procedure met with some skepticism. *See, e.g.*, 1 R. Mosteller et al., *McCormick on Evidence* § 96 (8th ed. July 2022 update) (noting "labored path followed by the Court to the conclusion" that "qualified work product privilege was . . . covered by . . . rules as then written"). Concerns were allayed, however, by the 1970 codification of the work-product doctrine in Federal Rule of Civil Procedure 26(b).

That rule states, in relevant part, that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

representative." Fed. R. Civ. P. 26(b)(3)(A).[12] As this court has observed, the quoted language sweeps broadly, such that documents memorializing "[n]ot only an attorney's mental impressions and opinions about a case but also the results of the attorney's factual investigations in anticipation of the case may constitute attorney work product." *N.Y. Times v. DOJ*, 939 F.3d at 489.[13] At the same time, however, the rule's introductory word, "ordinarily," signals that work-product protection is not absolute. Indeed, Rule 26 thereafter expressly states that attorney work product may be discovered if the materials at issue (i) "are otherwise discoverable" under the Federal Rules; and (ii) the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii). Even upon such a showing, however, Rule 26 requires a court ordering discovery of work-product

---

[12] While the Supreme Court deems Rule 26 to "substantially incorporate[]" the work-product doctrine identified in *Hickman*, *see Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981), some courts and commentators have suggested that *Hickman* furnishes protection beyond that provided by Rule 26, insofar as the latter pertains only to documents and tangibles. *See* 8 R. Marcus, *Federal Practice & Procedure (Wright & Miller)* § 2024 (3d ed. Apr. 2022 update); *see also United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010) (stating that Rule 26 "partially codifie[s]" the work-product doctrine); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (same). We need not here pursue the point because American Oversight's FOIA request pertains to documents and, for reasons stated herein, we conclude that both Rule 26 and *Hickman* support the award of summary judgment to defendants in this case.

[13] This effectively, if not explicitly, rejects the conclusion reached by some district courts that witness statements—particularly *verbatim* statements—are work product only to the extent "they reveal an attorney's strategic impressions and mental processes," not when they merely record the witnesses' factual observations. *See N.Y. Times v. DOJ*, 138 F. Supp. 3d 462, 471–72 (S.D.N.Y. 2015), *aff'd in part, rev'd in part & remanded*, 939 F.3d 479; *see also Murphy v. Kmart Corp.*, 259 F.R.D. 421, 431 (D.S.D. 2009). As the discussion in text shows, Rule 26 affords absolute protection to the former, and only qualified protection to the latter. Nevertheless, both are work product. American Oversight does not argue otherwise here.

20

materials to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* R. 26(b)(3)(B). In sum, Rule 26, like *Hickman*, recognizes as work product both the factual fruits of an attorney's investigations—sometimes referred to as "fact work product"—and an attorney's mental impressions and opinions—sometimes referred to as "opinion work product," *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007)—but it affords absolute protection only to the latter while affording qualified protection to the former. *See N.Y. Times v. DOJ*, 939 F.3d at 489; *see also In re Sealed Case*, 676 F.2d 793, 811 (D.C. Cir. 1982) (observing that *Hickman* established "two-tiered structure" with "qualified protection for 'fact' work product and more absolute protection for 'opinion' work product").

## III. The Withheld Materials Constitute Work Product

Upon *de novo* review, we conclude, as the district court did, that the 27 documents here at issue constitute attorney work product shielded from civil discovery by Fed. R. Civ. P. 26 and, thus, from disclosure by FOIA Exemption 5.

That the materials constitute work product under Rule 26 is evident from AUSA McKay's declaration, which states that the documents at issue were all "prepared in anticipation of litigation," specifically, the potential prosecution of campaign-finance-law violations or of obstruction of justice revealed by the Investigation. McKay Decl. ¶ 13; *see* Fed. R. Civ. P. 26(b)(3)(A). McKay further states that the materials at issue were prepared by law enforcement agents who were memorializing interviews conducted by federal

prosecutors or by agents working under the substantial direction of prosecutors.[14]  This satisfies Rule 26's broad definition of attorney work product as materials prepared "by or for a[] party or its representative (including . . . the party's attorney . . . or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  As the Supreme Court has recognized, one of the "realities of litigation in our adversary system . . . is that attorneys often must rely on . . . investigators and other agents in the compilation of materials in preparation for trial."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  Thus, it affords work-product protection to "material prepared by agents for the attorney as well as those prepared by the attorney himself."  *Id.* at 238–39.

Prosecutors' use of agents to conduct or memorialize interviews is not unusual in criminal investigations, and courts have frequently held 302s as well as prosecutors' own memoranda to constitute attorney work product.  *See, e.g.*, *N.Y. Times v. DOJ*, 939 F.3d at 494 (holding prosecutorial memoranda to be work product); *see also Judicial Watch, Inc. v. DOJ*, 806 F. App'x 5, 7 (D.C. Cir. 2020) (holding 302s to warrant FOIA Exemption 5 work-product protection); *SEC v. Collector's Coffee Inc.*, No. 19-CV-4355, 2021 WL 391298, at *4–5 (S.D.N.Y. Feb. 4, 2021) (holding SEC notes based on 302s protected work product); *Leopold v. DOJ*, 487 F. Supp. 3d 1, 11 (D.D.C. 2020)

---

[14] While American Oversight argued in the district court that defendants had failed to show that non-attorney agents were working under the substantial direction of federal prosecutors, it does not maintain that argument on appeal and, thus, can be understood to have waived it.  *See, e.g., Chevron Corp. v. Donziger*, 990 F.3d 191, 203 (2d Cir. 2021).

22

(holding 302s protected by work-product privilege under FOIA Exemption 5).[15]

American Oversight nevertheless submits that it is "not even clear" that the documents at issue qualify as "work product" because defendants knew or should reasonably have recognized that these documents "would necessarily [have] be[en] turned over in any prosecution resulting from the investigation." App't Br. at 17.[16] American Oversight asserts that, in these circumstances, "the purposes of the [attorney-work-product] doctrine—ensuring a zone of privacy for litigation preparation—are not served by the protection of these memoranda." *Id.* We are not persuaded.[17]

*First*, American Oversight's claim that the documents at issue would *necessarily* have been turned over in any ensuing prosecution is belied by the record. The sole defendant to be prosecuted as a result of the Investigation, Michael Cohen, pleaded guilty to an information before any obligations to disclose the disputed documents ever arose.

---

[15] Two of the 302s afforded Exemption 5 protection by the district court in *Leopold* are at issue in this case.

[16] American Oversight cites "longstanding policy" of the SDNY U.S. Attorney's Office to support this argument. App't Br. at 17 & n.10 (citing SDNY Discovery and Disclosure Policy (Oct. 15, 2010)). This appears to reference that office's practices for complying (sometimes complying early) with disclosure obligations imposed by federal rule, statute, and the Constitution. *See* Fed. R. Crim. P. 16(a)(1)(A); 18 U.S.C. § 3500(a)–(b); *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153–55 (1972).

[17] Defendants submit—not without some force—that American Oversight failed adequately to preserve this argument for appeal. We need not decide the question because, even if we were to do so in American Oversight's favor, its argument fails on the merits.

*Second,* attorneys prepare all sorts of documents that they know or reasonably anticipate will be turned over to adversaries in the course of litigation: motion papers, interrogatories, briefs, etc. Nevertheless, unless and until such documents are in fact turned over, they are recognized as protected work product. *See Hickman v. Taylor*, 329 U.S. at 511 (including "briefs" in list of documents entitled to work-product protection); *Institute for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) (holding that lawyers' drafts of non-party witness affidavits "do not lose their character as work product because a final executed version has been affirmatively used in the litigation").

*Third,* like the Court of Appeals for the D.C. Circuit, we conclude that the possibility that materials gathered or prepared by federal authorities may have to be produced in criminal discovery "has no bearing" on whether the materials constitute work product for purposes of a FOIA request. *Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C. Cir. 2011). "In criminal trials, evidentiary privileges may give way for any number of reasons . . . based on different legal standards than disclosure under FOIA." *Id.* at 1244–45; *see also supra* at 23 n.16. FOIA Exemption 5, however, instructs courts to look to the rules governing federal *civil*—not criminal—litigation to determine whether the documents at issue would be discoverable by an opposing party. *See N.Y. Times v. DOJ*, 939 F.3d at 488 (observing that courts "universally" look to rules of "civil discovery" in applying Exemption 5).

The documents here at issue would not ordinarily be discoverable under the civil rules, particularly Rule 26, and American

Oversight does not contend otherwise. It may be that, once prosecutors disclose attorney work product materials in a criminal proceeding, they can no longer claim work-product protection for purposes of Exemption 5. But that would result from waiver of the protection, not from the fact that the materials were never protected work product to begin with. *See United States v. Nobles*, 422 U.S. at 239 (holding that counsel's attempt to make testimonial use of work product materials at criminal trial waived protection).

Thus, like the district court, we conclude that the 27 documents at issue constitute protected work product. We, therefore, turn to American Oversight's main argument on appeal: defendants' purported waiver of work-product protection.

## IV. Defendants Have Not Waived Work-Product Protection for the Documents at Issue

### A. Waiver of Work-Product Protection

Like other discovery privileges, work-product protection is waivable. Such waiver precludes reliance on FOIA Exemption 5 to withhold or redact responsive documents. *See N.Y. Times v. DOJ*, 939 F.3d at 494. But just as it is the party invoking work-product protection (here, defendants) that bears the burden of demonstrating that a withheld document qualifies as such, it is the party asserting waiver (here, American Oversight) that bears the burden of demonstrating that the protection has been forfeited. *See Knight v. USCIS*, 30 F.4th at 332–33 (noting that, in FOIA context, burden of establishing waiver—there, of protection under Exemption 7(E)—is on requester); *see also Hickman v. Taylor*, 329 U.S. at 512 (stating that

25

"burden rests on the one who would invade [attorney] privacy to establish adequate reasons to justify production").

"A party waives the work product protection by taking actions inconsistent with . . . its purpose." *N.Y. Times v. DOJ*, 939 F.3d at 494; *see also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004) ("Generally speaking, the work product privilege should not be deemed waived unless disclosure is inconsistent with maintaining secrecy from possible adversaries." (internal quotation marks and alterations omitted)) (quoted approvingly in *N.Y. Times v. DOJ*, 939 F.3d at 494–95). As noted *supra* at 16–17, the purpose for which the law affords work-product protection is to ensure a vital adversarial process, which, in turn, serves the proper administration of justice. Actions inconsistent with this purpose can include the "disclos[ure of] work product," whether to the public at large or to an actual or anticipated litigation "adversary." *N.Y. Times v. DOJ*, 939 F.3d at 494; *accord In re Steinhardt Partners, L.P.* ("*Steinhardt Partners*"), 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears."). Waiver by disclosure to an adversary, moreover, affords other persons access to the disclosed work product. *See Steinhardt Partners*, 9 F.3d at 235 (rejecting idea of selective disclosure adopted by some courts and holding that company's transmittal to SEC—a potential litigation adversary—of memorandum prepared by company attorney in response to agency inquiry waived document's work-product protection as to shareholder plaintiffs in subsequent litigation).

Further, while waiver by disclosure can be made by transmitting the actual work-product document to a potential adversary, as was the case in *Steinhardt Partners*, it can also be made through statements describing the protected document with "sufficient[] specific[ity]." *N.Y. Times v. DOJ*, 939 F.3d at 494–95 (holding that Attorney General's public statements discussing contents of confidential DOJ memoranda waived work-product privilege as to those parts of memoranda discussed with specificity, but not as to other parts not discussed with specificity). The statements found to effect waiver by disclosure in *N.Y. Times v. DOJ* were made to the public at large, rather than to a litigation adversary. Nevertheless, the reasoning of *N.Y. Times v. DOJ* applies in both contexts.

In applying the waiver principles just outlined, we are mindful that *Steinhardt Partners* cautions against "rigid" rules. 9 F.3d at 236. In that case, this court specifically "decline[d] to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection." *Id.*[18] Rather, it instructed that "[c]rafting rules relating to [work-product] privilege in matters of governmental investigations must be done on a case-by-case basis," *id.*, with "[c]ommon sense and the practicalities of litigation defin[ing] the limits of the work product doctrine," *id.* at 235; *accord N.Y. Times v. DOJ*, 939 F.3d at 495 (quoting *Steinhardt Partners*).

---

[18] The court observed that in some circumstances, the disclosing party and the government might "share a common interest in developing legal theories and analyzing information," or they may "have entered into an explicit agreement that the SEC will maintain the confidentiality of the disclosed materials." *Steinhardt Partners*, 9 F.3d at 236. Defendants do not contend that those are the circumstances here.

27

Following those instructions here, we conclude that defendants did not waive work-product protection with respect to the documents at issue.

**B. Defendants Did Not Waive Work-Product Protection When Interviewing the Subjects or Targets of Their Investigation**

The gravamen of American Oversight's argument on appeal is that defendants waived any work-product protection for documents memorializing interviews with the targets or subjects of the Investigation because (1) such subjects or targets were litigation adversaries (2) to whom the contents of the documents at issue had necessarily been disclosed in the course of their interviews. We need not here decide whether American Oversight's first point is correct because, even if we were to accept its characterization of targets and subjects as litigation adversaries *arguendo*, its waiver argument fails.[19]

---

[19] American Oversight cites *Steinhardt Partners* to support its characterization of targets and subjects as DOJ's litigation adversaries. In *Steinhardt Partners*, this court held that a company that was the "subject" of an SEC investigation was in an adversarial relationship with the agency although no formal enforcement action had yet been instituted. Thus, when the company submitted a memorandum prepared by its attorneys to the SEC in response to an agency request, this court held that the company waived any work-product protection for the document and, therefore, had to produce it in response to shareholders' request. *See Steinhardt Partners*, 9 F.3d at 234. This was no novel conclusion; other courts had similarly ruled with respect to SEC investigations. *See, e.g., Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (professing "no difficulty" in concluding that "target" of SEC and DOJ investigations, which had disclosed documents to agencies after reaching plea agreement, was adversary of those agencies); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1369, 1372 (D.C. Cir. 1984) (stating "no question" that party was in adversarial relationship to SEC when it made disclosures to agency pursuant to program promising wrongdoers "more lenient treatment" and "chance to avoid formal investigation and litigation" (internal quotation marks omitted)).

In reaching that conclusion, our reasoning departs somewhat from that of the district court. For example, we do not reject American Oversight's waiver claim because the requested documents were not themselves ever disclosed to any litigation adversary. Rather, we assume that disclosure amounting to waiver can be made through statements distinct from the work-product document, provided those statements are "sufficiently specific" in revealing the latter's content. *N.Y. Times v. DOJ*, 939 F.3d at 496. The problem for American Oversight, as we explain in more detail below, is that it cannot show that the statements on which it relies, all made during investigatory interviews, waived work-product protection for documents created thereafter. It is in this context that the fact that the documents themselves were never disclosed is relevant. We also do not reject American Oversight's waiver claim solely because the documents at issue reveal attorney opinions and strategies. That fact might well preclude discovery of such material even on a showing of need. *See* Fed. R. Civ. P. 26(b)(3)(B). But if defendants actually waived attorney-work-product protection for the documents at issue, they could not

There is, however, reason to proceed cautiously in concluding that *Steinhardt Partners* supports the identification of the adversarial relationship urged here by American Oversight. Notably, it is not apparent that in *Steinhardt Partners* and the other SEC cases cited, courts were using the words "target" and "subject" as defined in DOJ policy. *See supra* at 3 n.2. DOJ defines the "target" of a criminal investigation as someone who, based on the evidence, can be denominated as a "putative defendant." *Justice Manual* § 9-11.151. By contrast, it defines a "subject" as anyone whose "conduct"—whether innocent or suspicious—is "within the scope of the grand jury's investigation." *Id.* Even if a "putative defendant" might be deemed a litigation adversary of the government for purposes of identifying waivers of work-product protection, it is more questionable whether that conclusion obtains with respect to every person whose conduct is within the scope of a grand jury's investigation. We do not explore the point further. Instead, we assume *arguendo* that Investigation targets or subjects were defendants' litigation adversaries because, even doing so, we conclude for reasons stated in text that American Oversight's waiver argument fails.

avoid disclosure even of opinions and strategies contained therein. But there was no such waiver here.

To explain, we start with the unusual chronology underlying American Oversight's waiver claim. A waiver of work-product protection generally occurs when an attorney discloses to a litigation adversary the contents of a protected document. This presupposes the existence of the document *before* disclosure is made. In such circumstances, the attorney's disclosure of the existing document's contents—whether made by transmitting the document itself, as in *Steinhardt Partners,* or by describing its contents with specificity, as in *N.Y. Times v. DOJ*—is an action sufficiently inconsistent with maintaining the confidentiality of the work product as to be recognized as a waiver.

American Oversight, however, proposes to turn this waiver principle around, arguing that an attorney can waive protection for work-product documents even before the documents exist. Specifically, American Oversight reasons that, by interviewing targets and subjects in this case, defendants necessarily disclosed to those litigation adversaries any and all matters discussed during the interview and, thereby, waived work-product protection for documents subsequently created to memorialize those interviews. The reasoning is flawed in several respects.

*First*, it is difficult to reconcile with Rule 26, which affords work-product protection to "documents and tangible things." Fed. R. Civ. P. 26(b)(3)(A). The Rule thus appears to contemplate the existence of a document *before* work-product privilege can attach to it, and, therefore, before that protection is waived. But even assuming

that, in some circumstance, waiver might precede work-product documentation, American Oversight's argument that this is such a case suffers other, more serious flaws.

*Second*, while any interviewed targets or subjects may have heard what was said during their interviews, what was not disclosed to them was *how* defendants would memorialize the interviews in documents subsequently prepared in anticipation of litigation. By interviewing purported litigation adversaries, defendants did nothing to signal that they had no interest in maintaining the confidentiality of that yet-to-be-created work product.

Indeed, in deciding how to memorialize an interview— including an interview with a litigation adversary—an attorney (or his agent) necessarily makes choices about structure, content, wording, emphasis, etc., that can reveal his thinking about the interview, his theories of investigation, and areas for possible further inquiry.[20] That work product, not revealed to the interviewed litigation adversary, is shielded by Rule 26 and *Hickman*, and nothing in defendants' interview conduct was inconsistent with maintaining that protection.

In seeking to avoid that conclusion, American Oversight emphasizes that, in preparing 302s, FBI agents are instructed to recount only what a witness said and not the interviewer's opinions

---

[20] For example, an attorney may conduct an interview in a seemingly straightforward, chronological manner, thereby mixing insignificant inquiries with critical ones, the better to conceal what the attorney already knows or does not know about the matter at issue and his theories of the case. But he may then structure his memorialization of that interview in a completely different manner, *e.g.*, by reference to topics, persons, or events, thereby exposing the focus of his concerns, theories, and developing strategies.

or contextual comments. *See supra* at 8 n.6. But even following such instructions, an agent must make myriad choices—about what parts of the interview to recount in detail and what parts to summarize; when to quote responses and when to paraphrase them; whether to track the order of the interview, the chronology of the events discussed, or the topics covered—that can reveal impressions, opinions, and theories without expressly stating them. In his declaration, AUSA McKay states that such is the case here, and American Oversight has adduced no evidence to the contrary.[21]

*Third,* and in any event, American Oversight seriously overstates what *defendants* disclosed at interviews with any targets or subjects. Defendants may have disclosed their own questions to the interviewees, but it was the interviewees who disclosed their answers. As to those answers—which are the crux of what is memorialized in the documents American Oversight seeks—defendants cannot be charged with the disclosure necessary to demonstrate waiver. To the contrary, by memorializing answers disclosed to them by targets and subjects of their investigation, defendants created classic work product. *See Hickman v. Taylor*, 329 U.S. 495.[22] It is in that context that it becomes significant that,

---

[21] The few disclosed sentences from the otherwise redacted Cohen 302 demonstrate agent choices in paraphrasing and quoting interview answers. *See supra* at 9.

[22] American Oversight strives to distinguish this case from *Hickman* on the grounds that the interviewees there were not litigation adversaries and, thus, the Supreme Court had no reason to consider waiver. We agree that *Hickman* says nothing about waiver, but that silence is not readily attributed to the interviewees' non-adversary status. While the most obvious potential litigation adversaries in *Hickman* were the deceased victims' estates, a competent attorney, in interviewing survivors of such a deadly accident, would have recognized that they too might have claims for physical or emotional injury and, thus, be

32

defendants thereafter never disclosed the protected documents or their contents to anyone. In short, with respect to their interviewees' answers, defendants never acted in a way "inconsistent" with affording work-product protection to the memorializing documents. *N.Y. Times v. DOJ*, 939 F. 3d at 494.

*Fourth*, insofar as defendants disclosed questions to interview subjects and targets, American Oversight has not specifically argued for production of such parts of the requested documents as memorialize those questions, absent the answers. Even if such an argument might be inferred from American Oversight's general reliance on FOIA's segregability requirement,[23] and from its response to defendants' argument for protection of their questions,[24] it fails to persuade. That is because American Oversight has adduced no evidence showing a sufficiently specific match between the questions asked at the interview and how any such questions would have been recorded in protected documents. *See N.Y. Times v. DOJ*, 939 F.3d at 497.

---

potential adversaries. In sum, we are not persuaded that American Oversight can dismiss *Hickman* in urging that work-product protection does not apply to memoranda memorializing attorney interviews with litigation adversaries.

[23] "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

[24] Defendants oppose the disclosure of questions because that would reveal "the topics discussed (and not discussed) with each witness, the focus and emphasis of the prosecutors, and their thinking about the substance of the case." App'ee Br. at 9. American Oversight replies that to the extent such matters were disclosed to litigation adversaries during the interview, the prosecution waived its interests in maintaining the confidentiality of these matters.

The FBI guide on which American Oversight relies instructs that 302s should "contain a record of statements made by the interviewee." FBI, *Domestic Investigations and Operations Guide* § 18-33 (Mar. 3, 2016). Nothing in that guide instructs agents to record questions. Thus, consistent with the guide, an agent could well memorialize an interviewee's statements in narrative form with no reference to questions as, for example, by indicating that, "The witness stated . . . ," or "The witness reported . . . ," or "The witness admitted . . . ." Or, consistent with the guide, an agent might contract a series of questions asked into one summary question before then recounting the interviewee's responses in detail.[25] In both circumstances it is difficult to conclude that the urged disclosure—the posing of particular questions at the interview—describes the resulting work product with the specificity necessary for waiver. *See N.Y. Times v. DOJ*, 939 F.3d at 495, 497.

Nor would the possibility of inferring the questions asked from the memorialized answers warrant any FOIA disclosure, as the questions would then not be "reasonably segregable" from the memorialized answers for which there has been no waiver of work-product protection. 5 U.S.C. § 552(b); *see, e.g., ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 488–89 (9th Cir. 2019) (stating that where protected work product is "so closely intertwined with" unprotected material "that the two categories of material cannot be easily separated," segregation of non-exempt material is not possible); *cf. N.Y. Times*

---

[25] For example, a 302 might summarize a series of identification questions as follows: "Asked about his background, [name] stated as follows . . . ," before then detailing what the interviewee said about name[s], residences, relatives, education, employment, arrest records, etc.

*v. DOJ*, 939 F.3d at 496–97 (holding, in context of agency legal memoranda, disclosure of certain information did not waive work-product protection for other segregable parts of document).[26]

Accordingly, because we conclude that American Oversight has failed to demonstrate that defendants waived the work-product protection afforded by Fed. R. Civ. P. 26 and FOIA Exemption 5 with respect to the documents sought, we affirm the award of judgment in favor of defendants.[27]

---

[26] To the extent these problems of specificity and severability derive from the fact that a written memorialization of an interview is necessarily distinct from the interview itself because of choices made as to *how* to document the latter, this only reinforces our second reason for rejecting the waiver argument, *i.e.*, that the written memorialization reflects work product never revealed in the interview.

[27] American Oversight makes no particular argument for defendants to produce, at a minimum, such parts of the disputed documents as identify interviewed persons as "subjects" or "targets." Such an argument would, in any event, be unsuccessful. As a matter of waiver by disclosure of work-product protection, no evidence shows that subject status was disclosed to interviewees or that anyone other than Michael Cohen was a target. *See supra* at 28–29 n.19. We thus need not here consider—or remand for the district court to consider—whether documents memorializing such statuses for persons never charged with a crime would be shielded by FOIA Exemption 7(C). *See* 5 U.S.C. § 552(b)(7)(C) (protecting against unwarranted invasions of personal privacy); *National Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 166 (2004) (noting "special reason" to protect personal data under Exemption 7(C) because law-enforcement documents "often contain information about persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance"); *Neely v. FBI*, 208 F.3d 461, 464–65 (4th Cir. 2000) (holding that identities of suspects and witnesses were properly withheld under Exemption 7(C)); *Computer Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996) ("Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." (citation omitted)); *Halloran v. Veterans Admin.*, 874 F.2d 315, 320 (5th Cir. 1989) (observing, in discussing basis for Exemption 7(C), that "[t]here can be no clearer example of an unwarranted invasion of privacy than to release to the public that another individual was the subject of a criminal investigation"); *see also Behar v. U.S. Dep't of Homeland Sec.*, 39 F.4th 81, 94 (2d Cir. 2022) (same regarding assuring witnesses confidentiality under Exemption 7(C)).

**CONCLUSION**

For the reasons stated, we conclude that plaintiff American Oversight's FOIA request fails because the documents sought are shielded by FOIA Exemption 5.

Defendants have carried their burden to show that memoranda and notes created by prosecutors and agents in memorializing interviews they conducted during a criminal investigation are attorney work product shielded from ordinary civil discovery by Fed. R. Civ. P. 26 and, therefore, from production under FOIA Exemption 5.

American Oversight has failed to show that defendants waived this protection by disclosing to investigation "targets" and "subjects" during their interviews the contents of these yet-to-be-created documents.

Accordingly, the district court's award of summary judgment to defendants is AFFIRMED.