# In the
# United States Court of Appeals
# For the Second Circuit

———————————————

August Term, 2022
Argued: May 10, 2023
Decided: November 26, 2025

Docket No. 22-1191

———————————————

ROBERT E. SHAPIRO,

*Plaintiff-Appellee,*

—v.—

UNITED STATES SOCIAL SECURITY ADMINISTRATION,

*Defendant-Appellant.*

———————————————————————

On Appeal from the United States District Court
for the District of Vermont
No. 19-cv-238, Christina Reiss, *Chief Judge.*

———————————————————

Before: CARNEY, SULLIVAN, and LEE, *Circuit Judges.*

Plaintiff-Appellee Robert E. Shapiro submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents related to how Defendant-Appellant, the United States Social Security Administration ("SSA"), assesses disability claims for migraines and other headache disorders. Under 42 U.S.C. § 1306(c), the SSA can require a requesting party to repay the agency for the

"full cost" of responding to a FOIA submission that is "not directly related to the administration" of an applicable SSA program.   At the same time, FOIA prohibits agencies from charging fees if they did not timely respond to the FOIA request. *See* 5 U.S.C. § 552(a)(4)(A)(viii).   The SSA sought reimbursement from Shapiro according to § 1306(c)'s cost-reimbursement provision, but Shapiro refused because the agency had failed to respond to his request within FOIA's statutory deadline.   The United States District Court for the District of Vermont ruled in favor of Shapiro (Christina Reiss, *Chief Judge*), holding that FOIA's fee-preclusion provision prevailed over § 1306(c)'s cost-reimbursement provision and ordering a refund of the fee charged to Shapiro.   Based in part on this ruling, the district court also awarded Shapiro attorneys' fees and costs.

On appeal, we hold that the text of the SSA's cost-reimbursement provision, § 1306(c), is unambiguous and takes precedence over the competing FOIA provision.   The cost-reimbursement provision begins with a "notwithstanding" clause that expressly exempts the agency from "section[] 552," i.e., FOIA, when the FOIA request is "not directly related to the administration of" an applicable SSA program.   Here, the SSA determined that Shapiro's request was not program-related, and we agree.   Accordingly, we **REVERSE** the district court's judgment and **VACATE** its order granting attorneys' fees and costs.

_____

CAROLINE D. LOPEZ, Appellate Staff, Civil Division, (Charles W. Scarborough, Appellate Staff, Civil Division, *on the brief*), *for* Brian M. Boynton, Principal Deputy Assistant Attorney General, U.S. Department of Justice, Washington, DC; Nikolas Kerest, United States Attorney for the District of Vermont, Burlington, VT (*on the brief*); Royce B. Min, General Counsel, U.S. Social Security Administration (*on the brief*), *for Defendant-Appellant United States Social Security Administration.*

JUSTIN G. SHERMAN, Langrock Sperry & Wool, LLP, Burlington, VT (Emily J. Joselson *on the brief*), *for Plaintiff-Appellee Robert E. Shapiro.*

2

Katie Townsend, Reporters Committee for Freedom of the Press, Washington, DC, *for Amicus Curiae Reporters Committee for Freedom of the Press*.

_____

EUNICE C. LEE, *Circuit Judge*:

Plaintiff-Appellee Robert E. Shapiro submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents related to how Defendant-Appellant, the United States Social Security Administration ("SSA"), assesses disability claims for migraines and other headache disorders. Under 42 U.S.C. § 1306(c), the SSA can require a requesting party to repay the agency for the "full cost" of responding to a FOIA submission that is "not directly related to the administration" of an applicable SSA program. At the same time, FOIA prohibits agencies from charging fees if they did not timely respond to the FOIA request. *See* 5 U.S.C. § 552(a)(4)(A)(viii). The SSA sought reimbursement from Shapiro according to § 1306(c)'s cost-reimbursement provision, but Shapiro refused because the agency had failed to respond to his request within FOIA's statutory deadline. The United States District Court for the District of Vermont (Christina Reiss, *Chief Judge*) ruled in favor of Shapiro, holding that FOIA's fee-preclusion provision prevailed over § 1306(c)'s cost-reimbursement provision and ordering a refund of the fee charged to Shapiro. Based in part on this ruling, the district

court also awarded Shapiro attorneys' fees and costs.

On appeal, we hold that the text of the SSA's cost-reimbursement provision, § 1306(c), is unambiguous and takes precedence over the competing FOIA provision. The cost-reimbursement provision begins with a "notwithstanding" clause that expressly exempts the agency from "section[] 552," i.e., FOIA, when the FOIA request is "not directly related to the administration of" an applicable SSA program. Here, the SSA determined that Shapiro's request was not program-related, and we agree. Accordingly, we **REVERSE** the district court's judgment and **VACATE** its order granting attorneys' fees and costs.

## BACKGROUND

### I. Relevant Statutes

We begin with a brief overview of FOIA and the Social Security Act's cost-reimbursement provision.

Originally enacted in 1966, FOIA created a public right of access to agency records. *See* 5 U.S.C. § 552 *et seq.*; *Am. C.L. Union Immigrants' Rts. Project v. U.S. Immigr. & Customs Enf't*, 58 F.4th 643, 651 (2d Cir. 2023). FOIA requires virtually any agency record to be made available to the public subject to certain exemptions. *Am. C.L. Union Immigrants' Rts. Project*, 58 F.4th at 652. The original version of the statute required that an agency make records "promptly available to any person"

"in accordance with published rules stating the time, place, [and] fees to the extent authorized by statute and procedure to be followed," but did not set express time limits for when an agency had to respond to initial FOIA requests or appeals of adverse determinations. Act of July 4, 1966, Pub. L. No. 89-487, 80 Stat. 250, 251 (1966) (codified as amended at 5 U.S.C. § 552).

A few decades later, the Social Security Act, which predated FOIA and was originally passed in 1935, was amended to add a provision that authorized the SSA to charge the requesting party the "full cost" of responding to FOIA requests "not directly related to the administration of" an applicable SSA program (the "Cost-Reimbursement Provision"). *See* Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2207, 95 Stat. 357, 839 (1981) (codified at 42 U.S.C. § 1306(c)). The Cost-Reimbursement Provision reads, in relevant part:

> *Notwithstanding sections 552 and 552a of title 5 [i.e., FOIA] or any other provision of law*, whenever the Commissioner of Social Security or the Secretary determines that a request for information is made in order to assist a party in interest . . . with respect to the administration of an employee benefit plan . . . or is *made for any other purpose not directly related to the administration of the program or programs under this chapter to which such information relates*, such Commissioner or Secretary *may require the requester to pay the full cost . . . of providing such information*.

42 U.S.C. § 1306(c) (emphases added).

The SSA's regulations implement this provision, including rules regarding

"[w]hat fees may be charged" for responding to FOIA requests, 20 C.F.R. § 402.5,[1]

and how to determine whether such requests are directly related to the

administration of an applicable SSA program, *see id.* § 402.170.[2] The SSA

regulations also permit the Commissioner to charge "the full cost of supplying the

information where the information is requested" for *non-program-related* purposes

"notwithstanding the fee provisions of the FOIA . . . or any other provision of law."

*Id.* § 402.175(a). In addition, the regulations include a fee schedule governing the

costs to be paid by the requester for responses to non-program-related requests.

*Id.* § 402.175(c).

After passing the SSA Cost-Reimbursement Provision of § 1306(c) in 1981,

Congress later amended FOIA, as relevant to this case, in 2007. As part of the

OPEN Government Act of 2007 (the "2007 FOIA Amendment"), Congress again

amended subparagraph 4 of FOIA, this time to prohibit an agency from assessing

*any* fees "if the agency fails to comply with any time limit under paragraph (6)

[setting statutory time limits for agencies to act on requests], if no unusual or

---

[1] We rely on the version of the regulations in effect at the time of the agency's decisions. Revised provisions became effective on January 17, 2025. These revisions do not affect our analysis.

[2] As explained in the Discussion *infra*, the regulations promulgate a list of criteria to be considered in making the determination of whether a request is program-related.

exceptional circumstances . . . apply to the processing of the request." *See*

Openness Promotes Effectiveness in our National Government Act of 2007, Pub.

L. No. 110-175, § 6, 121 Stat. 2524, 2526 (2007) (codified at 5 U.S.C.

§ 552(a)(4)(A)(viii)).[3]

## II.  Facts and Procedural History

Shapiro is a medical doctor specializing in neurology who advocates for

Americans with disabling headache disorders.  In October 2018, Shapiro

submitted a FOIA request to the SSA seeking information regarding the SSA's

decision-making process for choosing migraine and other headache-related

disorders for inclusion in the SSA's Listing of Impairments.[4]  He also sought

information related to how SSA adjudicators evaluate disability claimants for such

---

[3] As relevant here, under FOIA, an agency has "20 days . . . after the receipt of any such request [to determine] whether to comply with such request" and to "immediately notify the person making such request of such determination and the reasons therefor."  5 U.S.C. § 552(a)(6)(A)(i).  Similarly, the agency has twenty federal working days to respond to appeals of adverse determinations.  *Id.* § 552(a)(6)(A)(ii).

[4] The Listing of Impairments is an appendix in the SSA's regulations that "describes[,] for each of the major body systems[,] impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  The agency uses the criteria in the Listing of Impairments to evaluate claims for disability benefits.  *See id.* § 404.1525(c)(5) (explaining how the SSA uses the listing to find whether a claimant is "disabled or still disabled").

disorders.   Specifically, he requested the following from the SSA:

> I seek all documents, regardless of age, pertaining to SSA assessment, evaluation, and decisions regarding inclusion or exclusion of a proposed listing for impairments due to migraine and other headache disorders in the SSA Listing of Impairments (Blue Book).   These documents should relate to, but not be limited to, the 2013 to 2016 process of SSA rules-making, ANPRM, NPRM and final rules-making for revision of Medical Criteria for Evaluating Neurological Disorders listings (11.00 Neurological – Adult).   These documents should include, but be not limited to, all relevant correspondence, emails, memoranda, drafts, cost-benefit analyses, public comments, and related guidance documents, including those documents from and between all relevant SSA offices (i.e. Office of Regulations and Reports Clearance, Office of Disability Policy, Office of General Counsel, Offices of the Chief Actuary and Budget, etc.), as well as those document[s] from and between SSA offices and offices of other Federal Government agencies.   I also seek all documents (i.e. from SSA Office of Disability Policy or other SSA offices), regardless of age, pertaining to, and/or informing, guidance as to how Listings of Impairments (e.g[.] 11.02 Epilepsy) are to be appropriately utilized and interpreted (i.e. by SSA adjudicators and administrative law judges) in order to assess and determine medical equivalency with impairments attributed to, or caused by, migraine or other headache disorders, such as cluster headache.

Joint App'x at 45.   According to Shapiro, he sought these records to further scholarship on migraine disability and the public's understanding of how the SSA evaluates migraine and headache-related disorders for disability benefits.

In May 2019, more than six months after Shapiro submitted his initial FOIA request, the SSA responded by letter and asked Shapiro to pay $2,908 for processing fees associated with his "unusual," "non-program related" request.

*Id.* at 42.   The agency also explained that Shapiro could narrow his request or set a limit on the amount he was willing to pay.   Shapiro promptly paid the fee in full.   In July 2019, the SSA issued a decision on Shapiro's FOIA request, producing two memoranda and explaining that the agency was otherwise withholding 1,377 pages of responsive documents under FOIA Exemption 5.[5]   The decision also explained that personal information had been deleted from the enclosed memoranda pursuant to FOIA Exemption 6.[6]

Shapiro filed an administrative appeal in August 2019, challenging the agency's withholding of documents.   *See id.* at 14 ("I appeal the withholding by SSA of 1,377 page(s) of respons[ive] documents . . . . I also appeal the withholding by SSA of any further relevant documents responsive to the FOIA request . . . ."). Further, he appealed and sought a refund of the $2,908 fee he paid for the cost of

---

[5] FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."   *Am. Oversight v. U.S. Dep't of Just.*, 45 F.4th 579, 587 (2d Cir. 2022) (quoting 5 U.S.C. § 552(b)(5)).   In other words, "agency documents that would be privileged in ordinary civil discovery are also protected from disclosure under FOIA."   *Id.* at 588 (quoting *N.Y. Times v. U.S. Dep't of Just.*, 939 F.3d 479, 488 (2d Cir. 2019)).

[6] Under FOIA Exemption 6, agencies can withhold "personnel and medical files and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   *Jabar v. U.S. Dep't of Just.*, 62 F.4th 44, 50 n.3 (2d Cir. 2023) (quoting 5 U.S.C. § 552(b)(6)).

processing the request. In particular, he cited the SSA's failure to comply with the FOIA time limits as the basis for his request to "discharge and refund the $2,908.00 FOIA fee." *Id.* at 34.

In December 2019, before the SSA had adjudicated the administrative appeal, Shapiro initiated the underlying litigation in federal district court on the assumption that the agency's twenty-day deadline to decide the appeal, which had been filed four months earlier, had expired. Shapiro's complaint alleged violations of his rights under 5 U.S.C. § 552(a)(3), (4), and (6) and asserted three claims against the SSA: (1) failure to respond to Shapiro's FOIA request within the statutory timeframe; (2) failure to produce responsive records; and (3) failure to grant Shapiro's request for a fee waiver or reduction. Shapiro also sought an award of attorneys' fees and costs.

In July 2020, the SSA filed a motion to dismiss for failure to state a claim, or in the alternative, a motion for summary judgment. The SSA asserted three arguments in support of its position. First, the agency argued that Shapiro failed to exhaust his administrative remedies because his FOIA request did not "reasonably describe the records sought" and therefore was not "perfected." Def.'s Mot. to Dismiss or, for Summ. J. & Mem. in Supp., at 8, *Shapiro v. U.S. Soc. Sec. Admin.*, No. 19-cv-238 (D. Vt. July 24, 2020), ECF No. 14. Second, the SSA

argued that, with respect to its purported failure to produce documents, the agency was not required to respond because Shapiro's FOIA request was "unreasonably broad." *Id.* at 2. Third, regarding Shapiro's request for a fee waiver, the SSA argued that it had "clear authority" under the Cost-Reimbursement Provision, § 1306(c), to charge Shapiro the full cost of processing his request "notwithstanding" any of FOIA's fee provisions. *Id.*

In response, Shapiro filed a cross-motion for summary judgment on the same three issues. *See* Pl.'s Cross-Mot. for Summ. J., *Shapiro v. U.S. Soc. Sec. Admin.*, No. 19-cv-238 (D. Vt. Sept. 22, 2020), ECF No. 16. As relevant to this appeal, he presented two counterarguments against the SSA's right to charge him processing fees. First, Shapiro argued that he qualified for a fee waiver even if the Cost-Reimbursement Provision was enforced because his request was "directly related to the administration of the SSA." *Id.* at 17. Second, Shapiro argued that the 2007 FOIA Amendment, which prohibits fees when the agency response is untimely, should override the SSA's Cost-Reimbursement Provision because the 2007 FOIA Amendment was enacted later in time than the SSA provision, and courts should prioritize the most recently enacted statute as Congress's latest intent when interpreting statutes. *See* Pl.'s Reply in Supp. of Cross-Mot. for Summ. J., at 9, *Shapiro v. U.S. Soc. Sec. Admin.*, No. 19-cv-238 (D. Vt. Oct. 27, 2020),

ECF No. 21 (comparing 2007 FOIA Amendment with Cost-Reimbursement Provision, which was last amended in 1994).

The district court issued a series of decisions from March 2021 to March 2022 partly granting and partly denying both parties' motions. The first order was published on March 8, 2021, and held that, although the SSA did not need to respond to Shapiro's FOIA request because it was "unreasonably broad and burdensome," Shapiro was nevertheless entitled to a refund of his FOIA processing fees because the SSA had not timely responded to the request and therefore relinquished its right to assess fees under the 2007 FOIA Amendment. *Shapiro v. U.S. Soc. Sec. Admin.*, 525 F. Supp. 3d. 528, 539, 542 (D. Vt. 2021).[7] The district court also ordered the SSA to "specify a basis for withholding" certain responsive documents under FOIA Exemptions 5 and 6. *Id*. at 540.

To reach its conclusion that the fee refund was warranted under the 2007 FOIA Amendment and that § 1306 did not justify the SSA's charging of the fee, the district court relied on the canon of statutory interpretation disfavoring implied

---

[7] The district court also held as a preliminary matter that Shapiro had exhausted his administrative remedies because the SSA had failed to timely respond to his FOIA request and appeal.

repeals.[8]    In the district court's view, the 2007 FOIA Amendment "underscore[d] Congress's belief in the importance of [FOIA's] statutory time limit."    *Id.* at 541 (quoting *Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31, 38 (D.D.C. 2011)).    The district court reasoned that construing the Cost-Reimbursement Provision of 1981 to allow the SSA to recoup its fees notwithstanding the FOIA fee provisions would impliedly repeal the 2007 FOIA Amendment because the agency could then "charge fees regardless of whether it complied with FOIA deadlines."    *Id.* at 542. Accordingly, the district court "harmonized" the two statutes by "interpreting the 2007 Amendment as prohibiting the charging of fees when an agency fails to timely respond to a FOIA request."    *Id.* at 541.    That is, the Cost-Reimbursement Provision had to give way to the 2007 FOIA Amendment because "[a]ny other interpretation would render the 2007 Amendment a nullity and frustrate its legislative purpose."    *Id.* at 542.    The district court did not reach the issue of whether Shapiro's request warranted a fee waiver because it had already ruled that the SSA could not charge *any* fees due to its failure to comply with FOIA

---

[8] "[R]epeals by implication are not favored . . . ."    *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (quoting *Morton v. Mancari*, 417 U.S. 535, 549 (1974)). Thus, when "[p]resented with two statutes, the Court will regard each as effective— unless Congress'[s] intention to repeal is clear and manifest, or the two laws are irreconcilable."    *Id.* (internal quotation marks omitted).

deadlines. It also deferred its decision on attorneys' fees pending the SSA's submission of supplemental information regarding the documents withheld from Shapiro.

Nine months later, the district court issued its second order regarding the cross-motions and ruled that the SSA had properly withheld the disputed documents under FOIA Exemption 5. *See Shapiro v. U.S. Soc. Sec. Admin.*, No. 19-cv-238, 2021 WL 8316784, at *8 (D. Vt. Dec. 10, 2021) (concluding that the "SSA's withholding of all 1,845 pages of documents is justified under Exemption 5, and the court need not determine whether withholding the same documents is also justified under Exemption 6"). Nevertheless, the district court awarded Shapiro partial attorneys' fees and costs, even though he "did not prevail on the central issue of his case, [i.e.,] obtaining the release of the requested records or establishing that SSA wrongfully withheld them," because he *did* successfully obtain a refund of his FOIA fees and an order requiring the SSA to explain the reasons for its withholdings. *Id.* Accordingly, on March 30, 2022, the district court entered judgment awarding Shapiro $10,262.75 in attorneys' fees, $444.50 in costs, and $2,908 in refunded FOIA fees.

## STANDARD OF REVIEW

Summary judgment rulings in FOIA actions are reviewed *de novo*. *See Am.*

14

*C.L. Union Immigrants' Rts. Project*, 58 F.4th at 651. This Court also reviews questions of statutory interpretation *de novo*. *See Carroll v. Trump*, 49 F.4th 759, 767 (2d Cir. 2022). We consider awards of attorneys' fees and costs for abuse of discretion and consider arguments that the district court committed an error of law in denying the award *de novo*. *Wilson v. Fed. Bureau of Investigation*, 91 F.4th 595, 598 (2d Cir. 2024).

## DISCUSSION

On appeal, multiple statutory provisions are arguably in tension. The SSA asserts that the use of the word "notwithstanding" in the Cost-Reimbursement Provision of the Social Security Act is a textual indication of Congress's intent for the statute to supersede FOIA and all subsequent amendments to FOIA, including those prohibiting fees for an untimely response. In contrast, Shapiro argues that we should turn to various canons of statutory interpretation to harmonize the statutes or, in the alternative, give effect to the later-enacted fee provisions of the 2007 FOIA Amendment over the Cost-Reimbursement Provision, which was enacted in 1981.

We conclude that the plain text of § 1306(c), the Cost-Reimbursement Provision, is crystal clear: despite FOIA or any other law, the SSA can charge the requesting party for processing non-program-related information requests.

Congress's use of the word "notwithstanding" unambiguously demonstrates its intent to permit the SSA to recoup the "full cost" of processing fees for FOIA requests that meet the requirements of § 1306(c) and overrides any other provision of law which would otherwise conflict. Thus, the SSA had the authority to charge Shapiro the "full cost" of FOIA processing fees despite the agency's failure to respond to his request within the twenty-day statutory deadline.

## I. SSA Authorization to Charge Fees "Notwithstanding" Any Failure to Comply with FOIA Deadlines

The plain language of the Cost-Reimbursement Provision expressly specifies that it applies notwithstanding FOIA. *See* 42 U.S.C. § 1306(c) ("Notwithstanding section[] 552 . . . of title 5 [i.e., FOIA] or any other provision of law . . . ."). Therefore, we read the "notwithstanding" clause in § 1306(c) to mean that the Cost-Reimbursement Provision supersedes FOIA.

To reach our conclusion, we begin our analysis with the plain text of the statute. *See Carroll*, 49 F.4th at 767 ("Like any other statutory interpretation case, our inquiry begins with the text of the statute."). Section 1306(c) reads as follows:

> *Notwithstanding* section[] 552 . . . of title 5 [i.e., FOIA] or any other provision of law, whenever the Commissioner of Social Security or the Secretary determines that a request for information . . . is made for any other purpose not directly related to the administration of the program or programs . . . , such Commissioner or Secretary may require the requester to pay the full cost . . . of providing such

information.

42 U.S.C. § 1306(c) (emphasis added).   Here, our analysis starts with the word "notwithstanding."   "The ordinary meaning of 'notwithstanding' is 'in spite of,' or 'without prevention or obstruction from or by.'"   *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (quoting Webster's Third New International Dictionary 1545 (1986); Black's Law Dictionary 1091 (7th ed. 1999)).   According to the Supreme Court, the use of "notwithstanding" in a statute is an unambiguous congressional statement that such statute supersedes other specified laws enumerated in the text. *See id.* (explaining that the use of the word "notwithstanding" in a statute "shows which provision prevails in the event of a clash" (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 126–27 (2012))).

Further, the "notwithstanding" clause at issue here is followed by the all-encompassing phrase "any other provision of law," 42 U.S.C. § 1306(c), which expressly indicates Congress's intent that the Cost-Reimbursement Provision supersede not only FOIA but also *all other laws*.   *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (noting favorably that "the Courts of Appeals generally have interpreted similar 'notwithstanding' language . . . to supersede all other laws, stating that [a] clearer statement is difficult to imagine" (alterations in original and internal quotation marks omitted)).   Indeed, our Circuit regularly determines that

17

"notwithstanding" clauses "clearly signal[] the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of *any* other s[tatute]." *United States v. Shkreli*, 47 F.4th 65, 72 (2d Cir. 2022) (emphasis added) (quoting *Cisneros*, 508 U.S. at 18); *see Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 53 (2d Cir. 2010) (same); *Conyers v. Rossides*, 558 F.3d 137, 145 (2d Cir. 2009) (same).

We therefore conclude that the Cost-Reimbursement Provision's "notwithstanding" clause need not be harmonized with but, rather, takes precedence *over* subsequently enacted laws like the 2007 FOIA Amendment.[9] *See, e.g., Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1337 (11th Cir. 2006) (holding that the phrase "notwithstanding any other provision of law" reflects Congress's intent for the statute containing that language to take precedence over existing and later-enacted laws on the same subject (quoting *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995))); *McLymont*, 45 F.3d at 401 ("Congress'[s] use of the phrase 'notwithstanding any other provision of law' makes it clear that Congress

---

[9] We note that because there is no conflict between the Cost-Reimbursement Provision and the 2007 FOIA Amendment, Shapiro's argument that we must "give effect to the most recently enacted statute" "*when two statutes are in irreconcilable conflict*" is thus inapplicable. *See* Appellee's Br. at 17 (emphasis added) (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 991 (2d Cir. 1990)).

intended the penalty provisions of § 924(c) to take precedence over any preexisting or subsequently-enacted sentencing legislation, including the Sentencing Guidelines."); *cf. Lockhart v. United States*, 546 U.S. 142, 146 (2005) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." (quoting *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991))); *Hall v. United States*, 566 U.S. 506, 516 (2012) ("We assume that Congress is aware of existing law when it passes legislation . . . ." (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)). It follows that § 1306(c) authorizes the SSA to charge requesting parties the "full cost" of processing their FOIA requests for non-program-related information— even if the SSA fails to comply with FOIA's time limits.

Shapiro contends that permitting the SSA to submit untimely responses to requesters under FOIA while still allowing the agency to charge the "full cost" of fees under § 1306(c) "would render the 2007 Amendments a nullity and superfluous because it would allow an agency to charge fees regardless of whether it complied with FOIA deadlines." Appellee's Br. at 15 (internal quotation marks omitted). This argument misses the mark.

In our view, the Social Security Act's Cost-Reimbursement Provision creates an express (and quite narrow) exemption to FOIA specifically for the SSA, and

only when an information request submitted to that agency is not directly connected to a program-related purpose. Indeed, this interpretation is supported by the legislative history underlying § 1306(c), which indicates Congress's clear desire to protect the SSA's trust funds from being used to cover FOIA requests. *See* H.R. Rep. No. 97-158, at 287 (1981) (explaining that § 1306(c) "make[s] clear that reimbursement of [] costs *is not governed by the Freedom of Information Act* or by the Privacy Act, which contain provisions limiting the extent to which the cost of furnishing information can be recovered" (emphasis added)); *id.* (explaining that § 1306(c) allows the SSA to charge the "full cost of retrieving and transmitting any [FOIA] information requested" for non-program-related purposes).

Moreover, even under our interpretation of § 1306(c), the 2007 FOIA Amendment still applies to all other agencies—and even the SSA when the information request is made for a purpose directly related to the administration of an applicable SSA program. Thus, we do not see giving effect to the "notwithstanding" clause in the Cost-Reimbursement Provision as an implied repeal of the 2007 FOIA Amendment.

In sum, we hold that the SSA is authorized to charge FOIA fees for any non-program-related requests, "notwithstanding" any failure by the agency to comply with FOIA deadlines based on the plain text of § 1306(c).

## II.    Shapiro's FOIA Request is Not Program-Related

Shapiro alternatively argues that even if § 1306(c) controls, he should not have been charged a fee because his FOIA request was designed to educate the public and to inform disability claimants how to assert claims based on headache and migraine disorders.   According to Shapiro, this goal is directly related to the administration of SSA programs, thereby exempting his request from the Cost-Reimbursement Provision.   We disagree.

The plain language of § 1306(c) authorizes the SSA to impose full costs on information requests that are "not *directly* related to the administration of [SSA] programs," notwithstanding FOIA.   42 U.S.C. § 1306(c) (emphasis added) (explaining that the SSA "may require the requester to pay the full cost").   When interpreting a statute, the Court looks first to the statute's plain meaning.   *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000).   Congress's use of "directly" to qualify "related" in § 1306(c) suggests that a party seeking to avoid the imposition of full costs must demonstrate that the FOIA information is indisputably connected to the SSA's administration of benefits, not merely plausibly, loosely, or inferably tied to the SSA's program.   *See Directly*, Black's Law Dictionary (12th ed. 2024) (defining "directly" as "[i]n a straightforward manner"; "[i]n a straight line or course"; "[i]mmediately"); *Directly*, Am. Heritage Coll. Dictionary (5th ed. 2022)

21

(defining "directly" as "without anyone or anything intervening").

Additionally, the legislative history of § 1306(c) provides more context as to what constitutes a sufficiently program-related FOIA request. The legislative history suggests that Congress's intent was for the SSA to subsidize requesters seeking information related to its programmatic purposes but to recover full payment from requesters whose "request[s] [are] not directly related to determining an individual's social security benefit." H.R. Rep. No. 97-158, at 253; *see also id*. at 287 ("[T]he [SSA] would have authority to recover the full cost of retrieving and transmitting any information requested for any other purpose not directly related to the administration of the program or programs under the Social Security Act. This authority, of course, would not be used to recover the full cost of furnishing to individuals information requested for social security program purposes.").

Analysis of the SSA's regulations implementing § 1306(c) confirms that Shapiro's request is not program-related. When evaluating whether a request is program-related, including whether the information is needed "for a purpose which is directly related to the administration of a program under the Social Security Act," the SSA considers whether the request satisfies certain "major criteria." 20 C.F.R. § 402.170(a)(1)–(2)(i). "The major criteria [the SSA]

22

consider[s] in deciding whether a proposed use is [directly] related [to the administration of SSA programs] are: (A) Is the information needed to pursue a benefit under the Act? (B) Is the information needed solely to verify the accuracy of information obtained in connection with a program administered under the Act? (C) Is the information needed in connection with an activity which has been authorized under the Act? [and] (D) Is the information needed by an employer to carry out her or his taxpaying responsibilities under the Federal Insurance Contributions Act or section 218 of the Act?" *Id.* § 402.170(a)(i)–(2)(i).

Shapiro argues that two factors, (A) and (C), weigh heavily in his favor. With respect to factor (A), Shapiro contends that the "[d]isclosure of the [requested] records will educate the public, informing them about how to pursue disability benefits under the Social Security Act related to migraine and headache disorders." Appellee's Br. at 18. With respect to factor (C), Shapiro argues that "[t]he information is needed in connection with an activity authorized under the Act: namely, how Defendant reviews, evaluates and considers disability applications for migraine and headache disorders." *Id*. at 18–19. Shapiro explains further that the SSA's opaqueness has contributed to inequities in its program implementation in violation of federal and constitutional law with respect to claimants disabled by migraine and headache disorders. *See id.* at 19

23

(citing 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973); U.S. Const. amend. XIV § 1 (Due Process Clause)). We are not persuaded.

Regarding factor (A), Shapiro's request is "not *needed* to pursue some benefit under the Act," 20 C.F.R. § 402.170(a)(1)–(2)(i) (emphasis added), but rather is for the general purpose of raising public awareness about governmental activity; namely, the SSA's approach to evaluating disability claims from individuals with migraine and headache disorders. While greater public awareness might assist future applicants in pursuing Social Security benefits, this does not turn Shapiro's request into one seeking information "needed" to pursue benefits. Similarly, regarding factor (C), Shapiro's sweeping request is "not *needed* in connection with," *id.* (emphasis added), or even focused on, a specific activity of the SSA, but rather seeks broad information about the SSA's rubrics for evaluating two specific categories of claimants in order to inform those claimants about what he argues, without explanation, are violations of federal and constitutional law. At best, Shapiro's request is only tenuously "connect[ed to] an activity under SSA's purview," *id.*, permitting the SSA to impose full costs under § 1306(c).

In short, Shapiro's request primarily seeks to further his "scholarly research on migraine disability," Joint App'x at 11 (quoting Compl. ¶ 28), which is not related to him, as an individual, or to his employer, or to the administration of any

24

SSA program, but instead is geared toward general educational purposes.

Shapiro's more routine FOIA request is akin to requests where the SSA has

imposed costs rather than requests that the SSA has responded to free of charge.[10]

Thus, analyzing the plain meaning of § 1306(c), the legislative history, and the

SSA's implementing regulations, we conclude that Shapiro's request is not directly

program-related, and therefore the SSA was well within its authority to impose a

processing fee. Accordingly, we reverse the district court's judgment granting

Shapiro a refund of his FOIA processing fees.

## III. Attorneys' Fees and Costs

"[A] district court may 'assess against the United States reasonable attorney

fees and other litigation costs reasonably incurred' by a complainant who 'has

substantially prevailed' in his or her FOIA action." *Wilson*, 91 F.4th at 598–99

(quoting 5 U.S.C. § 552(a)(4)(E)(i)); *see also Pietrangelo v. U.S. Army*, 568 F.3d 341,

343 (2d Cir. 2009) (same). "[A] complainant has substantially prevailed if the

---

[10] For example, the SSA has clarified that, pursuant to § 1306(c), it provides information free of charge to requesters seeking to verify an employer's earnings report or compute an individual's Social Security taxes and, by contrast, imposes costs on requesters seeking information such as a more detailed earnings report or for civil litigation purposes. *See* SSA, *Social Security Handbook* § 1419.2, https://perma.cc/B5U8-M6K5 (last updated Aug. 8, 2011); *see also* John A. Svahn, *Omnibus Reconciliation Act of 1981: Legislative History and Summary of OASDI and Medicare Provisions*, 44 Soc. Security Bull. 3, 17 (1981).

complainant has obtained relief through . . . a judicial order, or an enforceable written agreement or consent decree[.]"  5 U.S.C. § 552(a)(4)(E)(ii)(I).  Relevant here, "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).

The district court noted that determining "whether Plaintiff substantially prevailed here [was] a close call" but ultimately awarded partial attorneys' fees and costs to Shapiro, reasoning that he had substantially prevailed by obtaining an order directing the SSA to (1) refund the FOIA processing fees and (2) explain the reasons for its withholdings.  *See Shapiro*, 2021 WL 8316784, at *8–10.  The district court concluded that because this order "changed the legal relationships of the parties," it was sufficient to make Shapiro eligible for attorneys' fees.  *Id.* at *8.

However, because we reverse the district court's decision regarding the first issue, i.e., the refund of the FOIA fees, and because we now conclude that the portion of the order requiring the SSA to explain its withholdings is insufficient to make Shapiro a "substantially prevailing" party, the judgment awarding

26

attorneys' fees must also be vacated. *See Jacobson v. Healthcare Fin. Serv.*, 516 F.3d 85, 96 (2d Cir. 2008) (partially reversing the judgment appealed from and vacating the award of attorneys' fees and costs where the "basis for granting costs and fees was necessarily erroneous"). Under the specific procedural and factual posture of this case, in which the only relief obtained was an order requiring a further explanation without requiring additional disclosure or other substantive change in position by the SSA, Shapiro cannot be deemed to have "substantially prevailed" under FOIA. A plaintiff "prevails" when actual relief on the merits of the claim "material[ly] alter[s] the [] legal relationship of the parties"—not when the court merely directs the agency to clarify its reasoning. *See Buckhannon Bd.*, 532 U.S. at 604 (internal quotation marks omitted); *Farrar*, 506 U.S. at 111–12.

The district court's order determining that the SSA's response was "untimely and unsupported by adequate explanation," Joint App'x at 150, required the SSA to provide a more detailed explanation but did not compel the release of documents, change the agency's withholding decisions, or otherwise grant Shapiro the substantive relief he sought. Thus, that procedural ruling neither constitutes success on a "significant issue" nor confers "prevailing" party status, substantially or otherwise. *Farrar*, 506 U.S. at 109 (internal quotation marks omitted). Put differently, while Shapiro may have obtained a judicial

order, he did not obtain meaningful relief on the merits of his FOIA claim. Because Shapiro has not "substantially prevailed" on any significant issue, we vacate the district court's order granting attorneys' fees and costs.

## CONCLUSION

Accordingly, for the reasons stated above, the judgment of the United States District Court for the District of Vermont is **REVERSED** and its order granting attorneys' fees and costs is **VACATED**.